### UNITED STATES *v.* HODSON.

1. Revenue statutes being remedial in their character are to be construed liberally to carry out the purposes of their enactment; and the rule of construction applicable to statutes generally, that what is implied in them is as much a part of the enactment as what is expressed, holds in regard to them.   This principle of construction applied to the 53d and 57th sections of the Internal Revenue Act of June 30, 1864.

2. Where a statute directs a bond to the government to be given by persons exercising certain employments, and to be conditioned for the performance of several particular acts which it specifically states, and the agent of the government takes a bond conditioned, not in the specific way that the statute directed, but for the parties' compliance with "*all* the provisions" of the act, "and such *other* acts as are now or as may hereafter be in this behalf enacted," the bond, if it have been voluntarily given, and is not contrary to law or public policy, is valid as against a party who has enjoyed benefits under it.   And this, although the statute which required the bond to be conditioned in a particular way, contain numerous other provisions, which it makes the duty of persons exercising employments under it, to comply with, but for which it does not contemplate the giving of any bond.

3. On such a bond, suit in the present case was sustained for breaches which the court adjudged to be within the conditions that the statute enacted that the bond should contain; the opinion of the court, however, asserting the validity of the bond on grounds more broad than it declared necessary to the judgment; that is to say, more broad than to the extent of the breaches assigned.

4. A bond which a statute says that a party whom it requires to be licensed as a distiller, "shall" give before his license is issued, and which makes it a penal offence for him to exercise the business of a distiller without taking out such license, is a voluntary bond.

IN error to the Circuit Court of the District of Wisconsin, the case being thus:

The Internal Revenue Act of June 30, 1864,* makes it

---

* 13 Stat. at Large, 242.

obligatory on persons meaning to be distillers to take out a license, and makes the business of distilling without a license an offence punishable by fine and imprisonment. And the 53d section of the statute enacts

"That any person required by law to be licensed as a distiller SHALL, *in addition to what is required by other provisions of law,* make an application therefor to the assessor of the district, and before the same is issued, the person so applying shall give bond to the United States in such sum as shall be required by the collector, with one or more sureties to be approved by said collector, 'conditioned'—

in effect—

"(1.) That if he shall use any additional still he will report the fact to the assessor.

"(2.) That he will from day to day enter in a book to be kept for that purpose the number of gallons that may be distilled, and the quantity of grain he may use; and that the book shall be open at all times to the inspection of the assessor.

"(3.) That he will render to the assessor, on certain days of each month, an exact account in writing of the number of gallons distilled, of the number placed in warehouse, and of the number sold or removed for consumption and sale, and also of the quantities of grain used for the fractional part of a month next preceding the report, and the proof thereof, which report is to be verified by affidavit.

"(4.) That he will not sell, or permit to be removed for consumption and sale, any spirits distilled under his license until they have been inspected, gauged, proved, and entered upon his books, as aforesaid.

"(5.) That he will, at the time of rendering his account to the collector, pay the duty imposed by law upon such spirits."

"And the said bond," the act proceeds, "may be renewed or *changed* from time to time *in regard to the amount and sureties* thereof, according to the discretion of the collector."

The statute, which is entitled "An Act to Provide Ways and Means for the Support of the Government and for other Purposes," is a statute of 182 sections, many very long, and contains a great variety of provisions on a great variety

of subjects; some being matters enjoined, and some matters forbidden; some enforced by penalties, fine, and imprisonment; and some not so made operative. The statute, however, obviously not contemplating that the bond shall be conditioned for the performance of any duties but those for which it says that it shall be.

In section 57th, separated both as to place and by intervening topics from that one (the 53d), which sets out in what the bond of the distiller is to be conditioned, it is enacted

"That ... every person who shall use any still, boiler, or other vessel as aforesaid, ... shall from *day to day make true and exact entry, in a book to be kept for that purpose, the number of gallons of spirits distilled, and also the number of gallons placed in warehouse, and also the number sold and removed for consumption and sale, and the proof thereof.*"

But it is not enacted that the distiller's doing this shall be incorporated among the conditions of the bond which the 53d section declares that he shall give.

With this statute in force, the United States took from one William Hodson, a distiller, to whom license had been granted, a bond precedent to the grant of license. The bond was not conditioned in the way that the already quoted 53d section prescribes, nor conditioned for the doing of specific things at all. The language of the condition was thus:

"That whereas the said William Hodson has made application to the collector of internal revenue for the second collection district of the State of Wisconsin for a license as a distiller at Turtleville. Now, therefore, if the said William Hodson shall truly and faithfully conform to *all* the provisions of *an act entitled* 'An act to provide internal revenue,' approved June 30, 1864, AND *such other acts as are now or may hereafter be in this behalf enacted,* then the above obligation to be void and of no effect, otherwise it shall abide and remain in full force and virtue."

The United States sued for the penalty of the bond, and assigned various breaches, and among them this as part of

a first one, " that the defendant Hudson did manufacture a large quantity of distilled spirits, to wit, 100,000 gallons, and *did not from day to day make a true entry in a book kept for that purpose of the number of gallons by him distilled, and also of the number of gallons by him placed in warehouse, and of the number of gallons by him sold and removed for consumption and sale, and the proof thereof.*"

Several other breaches were assigned, which were not denied to be breaches of acts for the performance of which the statute requires the bond to be conditioned.

The defendants traversed each of the breaches, including of course the part of the first above given one.

Upon the trial the United States offered in evidence the bond and proof of the several breaches. The defendants objected to the evidence on the ground that the conditions were not required by, and were not in conformity with, the statutes of the United States. The court sustained the objection. And the correctness of this ruling was the matter now here for review.

*Mr. Bristow, Solicitor-General, and Mr. C. H. Hill, Assistant Attorney-General, for the United States:*

1. It nowhere appears that the bond in question was exacted or extorted by the collector in the particular form in which it was given. Accordingly, the rule that a bond taken by a public officer *colore officii*, who has illegally exerted his authority, and thereby compelled the obligor to enter into an obligation not required by law is void, has no application here.

The condition of the bond embraces two separate and distinct matters, which make it divisible into two parts. The latter part, we admit, does not come within the requirements of the act directing the bond to be taken. Yet, even as a statutory bond, it is not to be regarded as ineffectual on that account. For if a bond taken under a statute contain, in addition to the condition prescribed by the statute, a condition not required by it, such condition may be void; but unless the statute provides that the

bond shall be void if it contain any other condition than that required, the bond will be valid and binding for the performance of the legitimate condition.*  So where part of the condition of a bond taken under a statute is prescribed by the statute, and part is not, if the condition be divisible, a recovery may be had for breach of the former.†  The several parts of such a condition are as much independent of and unaffected by each other as if the obligors had become bound thereto severally by separate instruments.‡

2.. That part of the condition which requires the principal obligor to " truly and faithfully conform to all the provisions" of the act of 1864, *ex vi termini* includes the various duties enumerated in the section describing the particulars in which the bond shall be conditioned; and the instrument, being thus in substantial though not in literal compliance with the statute, is good as a statutory bond.  Now in such bonds, where there is a substantial compliance with the law the want of a rigid conformity with its letter is not a fatal objection to the bond.§  And when the substance of a bond is prescribed by statute, if the bond be so drawn as to include all the obligations imposed by the statute, and to allow every defence given by law, it will be valid, though variant from the form prescribed.‖

It is true, the phraseology of the condition of this bond, viz., to " conform to *all* the provisions" of the act, may, in its generality, include more than the statute required to be inserted in the condition.  But the bond being given with reference to the statute, must be construed by the statute,¶ so that the unnecessarily comprehensive language of the

---

* Anderson *v.* Foster, 2 Bailey, 500; Walker *v.* Chapman, 22 Alabama, 116; United States *v.* Brown, Gilpin, 155.

† The Ordinary *v.* Executors of Smith, 2 Green, 479; United States *v.* Bradley, 10 Peters, 343.

‡ Harrison *v.* Seymour, 1 Law Rep., C. P. 518.

§ Central Bank *v.* Kendrick, Dudley, 66; Gardener *v.* Woodyear, 1 Ohio, 170; Yale *v.* Flanders, 4 Wisconsin, 96; Nunn *v.* Goodlett, 5 English, 89.

‖ Rhodes *v.* Vaughan, 2 Hawks, 167; Cobb *v.* Commonwealth, 3 Monroe, 391.

¶ Baker *v.* Morrison, 4 Louisiana Annual, 373.

condition will be restrained in its operation to what may be lawfully included therein. Accordingly, no breaches are properly assignable thereunder for anything not within the requirements of the statute.*

The case of *Ohio* v. *Findley*,† which arose under a law of that State, passed in 1831, prescribing the duties of county treasurers, is in point. One section of that act required " that each county treasurer, previous to entering on the duties of his office, shall give bond . . . conditioned for the paying over, according to law, all moneys which shall come into his hands for State, county, township, or other purposes." Subsequent sections prescribed various *other* duties to be performed by the county treasurer. The court held that a bond given by a county treasurer under that act conditioned that he should " faithfully and impartially discharge *all* the duties of his said office agreeably to law," is a good statutory bond *for so much as is prescribed by the statute and comprehended in the condition*, even though it may be void for the residue.

But if the bond is not good as a statutory bond, yet having been voluntarily given, and being neither prohibited by the statute nor against the policy of the law, it is valid as a common law obligation.

Story, J., giving an opinion of the court, fully admits, and indeed asserts this doctrine in *United States* v. *Tingey*.‡

In *Bank of Brighton* v. *Smith*,§ it is said by Bigelow, C. J.:

" The rule of law is well settled, that a bond given for the faithful performance of official duties, or in pursuance of some requirement of law, may be valid and binding on the parties, although not made with the formalities or executed in the mode provided by the statute under which it purports to have been given. This rule rests on the principle that, although the instrument may not conform to the special provisions of a statute or regulation in compliance with which the parties executed it, nevertheless, it is a contract voluntarily entered into upon a

---

* Hall *v.* Cushing, 9 Pickering, 395.      † 10 Ohio, 51.

‡ 5 Peters, 115; and see United States *v.* Linn, 15 Id. 290.

§ 5 Allen, 415.

sufficient consideration, for a purpose not contrary to law, and therefore it is obligatory on the parties to it in like manner as any other contract or agreement is held valid at common law."

In support of this doctrine additional authorities may be cited :*

The 57th section of the act does in fact require no more than what the united conditions of the bond, as prescribed by the 53d section, do. He is to keep "books" as to all the matters mentioned in the conditions, so that assigning breaches in the language of the 57th section is, in truth, assigning them in what would have been the language of the condition of the bond in this case if the condition had been in literal compliance with the words of the statute.

*Mr. M. H. Carpenter, contra:*

The bond sued on was void. By the act under which it was given, no person could carry on the business of a distiller without giving a bond conditioned in a mode particularly prescribed. And it is plain that in regard to the condition prescribed, Congress meant that the collector should not make a change. Why otherwise is the condition minutely and with such pains prescribed? and why in regard to amount and sureties is the collector authorized to make a change? The act expressly refers to other duties "required by other provisions of law," which are "in addition" to those which the bond is meant to enforce. But these former it enforces not by bond with sureties, but by penal or other sanctions. Such is the system which Congress, in its wisdom, saw fit to adopt. The collector here, has, therefore, taken a bond which no law required, one which supersedes the system of Congress and adopts a new system of the collector's own instead. The bond is thus one which "under color and pretence of an act of Congress, and under color of

---

* Morse v. Hodsdon, 5 Massachusetts, 314; Burroughs v. Lowder, 8 Id. 373; Sweetser v. Hay, 2 Gray, 49; Dunbar v. Dunn, 10 Price, 54; Justices v. Smith, 2 J. J. Marshall, 473; Hoy v. Rogers, 4 Monroe, 225; Lane v. Kasey, 1 Metcalfe (Ky.), 410; Gathwright v. Callaway County, 10 Missouri, 663; Horn v. Whittier, 6 New Hampshire, 88.

office was required and extorted against the form and effect of a statute." Such a bond is *adjudged* in *United States* v. *Tingey*, cited on the other side, to show it good, to be void; 'the nullity of the bond being in truth, the only point adjudged in the case, and the various remarks relied on by the other side, about the difference between such a bond and voluntary bonds being mere *dicta* of Story, J., extra-judicial, and irrelative, and *from* the purpose of the judgment which declared the bond bad.

That a bond was required, or exacted, or extorted, is certain. The distiller had to give it or give up -his vocation. He "shall" give it, is the language of the act of Congress, before he gets his license. Certainly no distiller gives voluntarily such a bond as distillers are required by the statute to give, or gives it otherwise than because he is required by the law, which commands obedience from all, to give it, and because if he don't give it he can get no license, and will be fined and imprisoned for exercising his business. Is a bond thus given, voluntarily given—given by choice? Certainly not. If it were, a statute requiring it—declaring that the party SHALL give it, and visiting him with a loss of his license if he does not—would be useless. A bond may be exacted or extorted by influences, having nothing in them- of duress of person. When the law speaks it compels, it forces. The collector presents his bond ready drawn. *He* is particularly bound to know what sort- of security the government requires. The distiller can rarely know. Independently of which the collector is " in office," and " obeyed," of course. The bond is presented for the distiller's signature, and he must sign or forfeit his right to exercise his calling. He acts at his peril if he misjudges as to the right of the government to have the exact bond put before him for his signature. And he does not presume to judge at all, but signs it as of course.

Mr. Justice SWAYNE delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United States for the District of Wisconsin. The action was debt

upon a penal bond in the sum of five thousand dollars.  The condition was not set out and no breaches were alleged in the declaration.  The declaration was framed to recover the penalty.  The defendants craved oyer of the condition, and it was given.  It is set out in the record, and is substantially as follows:

That William Hodson had applied to the collector of internal revenue for the second collection district in the State of Wisconsin for license as a distiller at Turtleville, in that State, and that if the said William Hodson should faithfully conform to all the provisions of an " act to provide internal revenue to support the government, and to pay interest on the public debt, and for other purposes," approved June 30th, 1864, and such other acts as now are or may be hereafter in this behalf enacted, then the above obligation to be void, otherwise to remain in full force.

The defendants pleaded performance.  The plaintiffs thereupon replied and assigned the following breaches in their replication:

(1.) That the defendant, Hodson, did manufacture a large quantity of distilled spirits, to wit: 100,000 gallons, and did neglect to make a true entry and report of the same, and did not from day to day make a true entry in a book kept for that purpose of the number of gallons by him distilled, and also of the number of gallons by him placed in warehouse, and of the number of gallons by him sold and removed for consumption and sale, and the proof thereof, and that he did not cause the same to be done.

(2.) That the said Hodson did not conform to the provisions of said act and acts in this, to wit: that he did sell and remove from his distillery, for consumption and sale, a large quantity of distilled spirits manufactured by him, to wit: 50,000 gallons, and did neglect to render to the assessor or assistant assessor of the said second collection district, &c., a true account in duplicate, taken from his books, of the number of gallons of spirits distilled by him, and also of the number of gallons sold and removed for consumption and sale.

(3.) That the said Hodson did not conform to the laws aforesaid in this, to wit: that he did remove from his distillery a large quantity, to wit: 100,000 gallons of spirits, then and there by him manufactured, upon which duties were by law imposed, and which duties he neglected to pay.

(4.) And that the said Hodson did not conform to the provisions of the laws aforesaid in this, to wit: that he did manufacture a large quantity of spirits, to wit: 100,000 gallons, and did remove the same from his distillery for consumption and sale, before the same were inspected, gauged, and branded by an inspector appointed to perform such duties, and did neglect to cause the spirits so removed to be inspected, gauged, and branded before the same were removed, as aforesaid.

The defendants filed a rejoinder, specially traversing each of the breaches assigned, and concluded to the country. This put the cause at issue. Upon the trial the United States offered in evidence the bond and proof of the several breaches. The defendants objected to the evidence upon the ground that the conditions were not required by, and were not in conformity with, the statutes of the United States. The court sustained the objection and excluded all the evidence. A verdict and judgment were thereupon rendered for the defendants. The United States excepted, and have brought this ruling here for review.

The only inquiry presented for our consideration is the validity of the bond upon which the suit was founded.

It would have been more regular to raise the question by a demurrer after oyer, or by a motion in arrest of judgment. But if the bond were void it was competent for the defendants to raise the objection at any stage of the trial. The court was not bound to proceed further, when it became clear that, whatever the verdict, the plaintiff could not recover. To proceed with the trial under such circumstances would have been idly to waste the time of the court and trifle with the forms of justice.

The bond was taken under the 53d section of the act of

June 30th, 1864, ch. 173.*    That section required a bond to be given by every licensed distiller, and prescribes its conditions.    They are substantially:

That if the distiller shall use any additional still he will report the fact to the assessor.

That he will from day to day enter in a book to be kept for that purpose, the number of gallons that may be distilled, and the quantity of grain he may use; and that the book shall be open at all times to the inspection of the assessor.

That he will render to the assessor, on the 1st, 11th, and 21st days of each month an account in writing of the number of gallons distilled, of the number placed in warehouse, and of the number sold or removed for consumption and sale, and also of the quantity of grain used for the fractional part of a month next preceding the report, and the proof thereof, which report is to be verified by affidavit.

That he will not sell, or permit to be removed for consumption and sale, any spirits distilled under his license until they have been inspected, gauged, proved, and entered upon his books, as aforesaid.

And that he will at the time of rendering his account to the collector pay the duty imposed by law upon such spirits.

It is not denied that all the breaches are within the requirements of the statute touching the bond, except that part of the first one, which is, that the licensee did not, from day to day, " make true and exact entry thereof in a book to be kept for that purpose, of the number of gallons by him placed in warehouse, and the number of gallons by him sold and removed for consumption and sale, and the proof thereof." It is said the statute required him to do this, but did not require him to give a bond that he would do so. The statute required the bond to be conditioned that he would, from day to day, enter in a book to be kept for that

---

* 13 Stat. at Large, 242.

purpose, the number of gallons distilled; that the book should be open to the inspection of the assessor; that he would render, at the time specified, "an exact account in writing" of the number of gallons sold, or removed for sale and consumption, and the proof thereof; and that he would not sell, or permit to be sold or removed, for consumption or sale, any spirits distilled by him until the quantity had been "duly entered upon his books, as aforesaid." Considering these provisions together, we think the implication clear, that they require such an account to be kept as the breach alleges was not kept, and that if the conditions, as prescribed, had been set out at length in the bond, such would have been their legal effect. The first part of the 57th section is silent as to the bond, but is explicit as to the account, and strongly supports the conclusion at which we have arrived. The question must be considered in the light of the entire context bearing upon the subject. What is implied in a statute is as much a part of it as what is expressed.*

Revenue statutes are not to be regarded as penal, and therefore to be construed strictly. They are remedial in their character, and to be construed liberally, to carry out the purposes of their enactment.†

We hold this, like all the other breaches, to be within the conditions which the statute enacts the bond shall contain.

In one view of the case, this fact is important; in another and perhaps more important one, it is no wise material. Both will be presently considered.

The record is silent as to any coercion or duress. The bond is, therefore, to be considered a voluntary one.‡ A bond in this form is not prohibited by the statute, nor is it contrary to public policy. It was founded upon a sufficient consideration, and was intended to subserve a lawful purpose.

In *The United States* v. *Tingey*,§ the suit was upon the bond

---

\* United States *v.* Babbit, 1 Black, 55.

† Cliquot's Champagne, 3 Wallace, 145.

‡ United States *v.* Bradley, 10 Peters, 345.    § 5 Peters, 127.

of a purser in the navy. The statute declared "that every purser, before entering on the duties of his office, shall give bond, with two or more sufficient sureties, in the penalty of two thousand dollars, conditioned faithfully to perform all the duties of purser in the navy of the United States."* The court said "it is obvious that the condition of the present bond is not in the terms prescribed by the act, . . . and it is not limited to the duties or disbursements of Deblois as purser, but creates a liability for all moneys received by him, and for all public property committed to his care, whether officially as purser or otherwise." The bond was held to be valid. The decision was put upon the grounds that the government had the capacity to make the contract, that the United States were a body politic, and that as incident to its general right of sovereignty, it was competent to enter into any contract not prohibited by law, and found to be expedient in the just exercise of the powers confided to it by the Constitution. *Dugan* v. *The United States*† was referred to as sustaining this proposition. It was remarked that a different principle would involve a denial to the General and the State governments of the ordinary rights of sovereignty. In conclusion, it was said, in relation to the bond there in question, "The United States have a political capacity to take it. We see no objection to its validity in a legal or moral view." Tingey, who was a surety, pleaded, among other things, in the court below, that the bond "was under color and pretence of said act of Congress, and, under color of office, required and extorted from the said Deblois, and from the defendant, as one of his sureties, against the form and effect of the said statutes, by the then secretary of the navy." The United States demurred. The court overruled the demurrer, and gave judgment for the defendant. The United States prosecuted a writ of error. This court held the plea sufficient and affirmed the judgment.

In the case of *The United States* v. *Bradley*,‡ the views of

---

\* Act of March 30, 1812, 2 Stat. at Large, 699, ch. 47.
† 3 Wheaton, 172.                    ‡ 10 Peters, 343.

the court expressed in *The United States* v. *Tingey* were re-stated and, upon the fullest consideration, were reaffirmed.

*The United States* v. *Linn*,\* was an action against a receiver of public moneys and his sureties. The statute in that case required that the receiver should " give *bond*, with approved security, in the sum of ten thousand dollars, for the faithful discharge of his trust." The instrument given was without seal, and was, therefore, not the security required by the statute. The counsel for the defendants insisted that the instrument was void for the reasons, among others, that it was not the form of security required by the statute; that the prescribing of one security was an implied prohibition of all others, and that if the instrument in question could be sustained, the statute might in all cases be disregarded and a mortgage of realty or personalty or any other imaginable security might be substituted for that which the statute required. The court responded: " If this is a contract, entered into by competent parties and for a lawful purpose, not prohibited by law, and is founded upon a sufficient consideration, it is a valid contract at common law.". " A mortgage, or any other approved security voluntarily given, would no doubt be valid."

These cases are conclusive of the question before us. Their authority has not been shaken by any later adjudication; we think they rest upon the soundest principles, and are in accordance with a wise and salutary policy. We feel no disposition to re-examine the propositions they affirm.

A narrower view of the instrument in question may be taken, which will also maintain its validity to the extent of the breaches assigned in the declaration. It is a settled principle of law that where a bond contains conditions, some of which are legal and others illegal, and they are severable and separable, the latter may be disregarded and the former enforced. Applying this principle to the case before us, all which this instrument contains with reference

---

\* 15 Peters, 290.

to statutes other than the act of 1864, under which it was taken, may be rejected, and the generality of the reference to that act may be so limited as to include only what is covered by the conditions prescribed by the statute, as if those conditions were incorporated and set out in the bond *in hæc verba*.   An authority exactly in point, for this construction, is found in the well-considered case of *Ohio* v. *Findley and others*.*   The principal in the bond in that case was a county treasurer.   The bond was conditioned that he should perform his official duties according to law.   The statute, as in the case before us, was specific in its requirements as to what the bond should contain, and the condition, it was admitted, largely exceeded them.   The court said: "That part which is legal is marked out in the statute-book itself, and is therefore as completely severable from the rest as if the two parts were separated in the condition of the bond."

But we prefer to place our judgment upon the broader ground marked out by the adjudications of this court, to which we have referred.   Every one is presumed to know the law.   Ignorance standing alone can never be the basis of a legal right.   If a bond is liable to the objection taken in this case and the parties are dissatisfied, the objection should be made when the bond is presented for execution. If executed under constraint, the constraint will destroy it. But where it is voluntarily entered into and the principal enjoys the benefits which it is intended to secure and a breach occurs, it is then too late to raise the question of its validity.   The parties are estopped from availing themselves of such a defence.   In such cases there is neither injustice nor hardship in holding that the contract as made is the measure of the rights of the government and of the liability of the obligors.

Judgment REVERSED, and the cause remanded with an order to issue a