# DISTRICT OF COLUMBIA *v.* FICKLING.*

---

STATUTES; LICENSE TAXES; PUBLIC HACK STANDS.

1. Statutes enacted for the purpose of raising revenue by imposition of license taxes are to be liberally construed for the purpose of carrying out the intention of the legislature, notwithstanding a penal clause, usual in all such enactments, in respect of licenses, for the purpose of securing prompt and effectual enforcement. (Following *Lauer* v. *District of Columbia,* 11 App. D. C. 453.)

2. Where a company owning and operating a railroad station grants to an automobile cab company the exclusive use of a space in its building and on its grounds for the purpose of subserving the interest of arriving and departing passengers, and the cab company not only serves passengers from such place, but also other passengers desiring cab service, the use of such place makes it a public stand within the meaning of the statute imposing a license tax upon every vehicle kept in the public streets and subject to the call of the public generally, at rates fixed by municipal ordinance, and also imposing a tax upon owners of establishments where vehicles are kept for hire and storage at rates not so fixed, but providing that no owner of a vehicle using the "public stands" shall be exempt from paying the first-named tax; and the cab company must therefore pay a tax on each of its vehicles as a public hack, although it has taken out a license as the

---

*License.*—For cases on the question of license fee for use of streets by vehicles, see note to *Tomlinson* v. *Indianapolis,* 36 L.R.A. 413; limit of amount of license fee, note to *State ex rel. Toi* v. *French,* 30 L.R.A. 415; as to discrimination as to amount of tax or license fee on different vehicles as affecting validity of tax, see note to *Waters-Pierce Oil Co.* v. *Hot Springs,* 16 L.R.A.(N.S.) 1035.

keeper of such an establishment. (Construing pars. 11 and 13 of the act of Congress of July 1, 1902, 32 Stat. at L. 624, chap. 1352.)

No. 1997. Submitted May 4, 1909. Decided May 11, 1909.

IN ERROR to the Police Court of the District of Columbia.
Reversed.

The facts are stated in the opinion.

*Mr. Edward H. Thomas,* Corporation Counsel, and *Mr. Francis H. Stephens,* Assistant, for the plaintiff in error.

*Mr. Frederic D. McKenney, Mr. John S. Flannery,* and *Mr. Williams Hitz* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This case is before us on writ of error to the police court to review a judgment quashing an information in which Jeremiah Fickling was charged with engaging in the business of a proprietor of a horseless carriage for the carriage of passengers, and accepting hire therefor, without having a license.

No objection was taken to the form of the information, or to the charge that Fickling was the general manager of the Taxicab Company, and as such operated the carriage. The motion to quash was submitted upon an agreed statement of facts, of which the following is a summary:

The Terminal Taxicab Company, of which Fickling is general manager and representative, is a corporation empowered by charter to engage in the business of a livery stable or an auto garage in the city of Washington, and also in that of a public hackman.

Said company maintains a garage at No. 1219 Thirteenth street, N. W., and has paid for and taken out a license for the same. It has no license for a garage at any other place; nor has it taken out a license for its carriages as public hacks.

The Washington Terminal Company owns and operates the Union Railway Station in the city of Washington. The Taxicab Company has a contract with the Terminal Company by which it has the exclusive use of a certain space within the grounds and buildings of that company, as a place or station for its vehicles, to enable it to operate a cab service at the railway station. In consideration of such exclusive right, the Taxicab Company agrees to maintain at said station, by day and night, a sufficient service therefor at rates not to exceed those prescribed for public hacks by the District commissioners. The space occupied by the Taxicab Company at the Union Station is the property of the Terminal Company, and no portion of it is in a public street or square of the city of Washington. The Taxicab Company does not keep any of its carriages at any of the designated public cab stands.

On the day alleged in the information, the Taxicab Company had its carriages in said space at the Union Station, and was operating its cabs from there.

In response to a telephone message on that day, one of its vehicles was sent from that place to a house on H street, from which it carried a passenger to a place on Pennsylvania avenue, and received pay for said service.

The right to require a license for the carriages of the Taxicab Company as public hacks is claimed under paragraph 11 of the personal tax act of Congress, approved July 1, 1902 (32 Stat. at L. 624, chap. 1352), which reads as follows:

"Par. 11. That proprietors or owners of hacks, coaches, omnibuses, carriages, wagons, and other passenger vehicles for hire shall pay license taxes as follows: Vehicles drawn by one animal, six dollars per annum; autovehicles, automobiles, electromobiles, or other horseless vehicles, by whatever name called, and vehicles drawn by more than one animal, nine dollars per annum. Licenses issued under this section shall date from July first in each year. The driver of every licensed passenger vehicle, while transacting business as such driver, shall wear conspicuously upon his breast a badge numbered to correspond with the license of his vehicle. The badge shall be furnished by

the District of Columbia, and a tax of fifty cents shall be charged therefor in addition to the amount of the vehicle license."

It is practically conceded that the service rendered by the carriage, as shown in the evidence, would bring it within the provisions of the foregoing paragraph if it stood alone in the act. But there is another paragraph under which exemption is claimed. Paragraph 13 reads as follows:

"Par. 13. That proprietors or owners of establishments where autovehicles of any pattern, description, or motor power whatsoever are kept for hire or are kept or stored for others, for profit or gain, shall pay a license tax of twenty-five dollars per annum for ten vehicles or less, and two dollars additional for each vehicle in addition to ten: *Provided,* That nothing in this paragraph shall be so construed as to exempt the owner of any vehicle using the public stands from paying the additional license tax provided in paragraph eleven of this section."

In connection with the foregoing must be noted the fact that the District commissioners, on March 17, 1908, by regulation established certain public places as stands for horseless vehicles. The place occupied by the Taxicab Company at the Union Station was not one of these. Another regulation fixed the rates of fare for horseless vehicles.

The contention of the defendant in error that was sustained in the court below is, that having paid the license tax required by paragraph 13 for keeping a garage, and keeping no carriages for hire at any one of the designated public stands, it is not liable to taxation upon carriages kept in the hired private space at the Union Station. It is argued that "public stands," within the meaning of the proviso, are those only which have been established as public cab stands by the regulation aforesaid.

Paragraphs 11 and 13 are provisions of a general revenue act. It is well settled that such acts are to be liberally construed for the purpose of carrying out the intention of the legislature, notwithstanding a penal clause, usual in all such enactments in respect of licenses, for the purpose of securing prompt and effectual enforcement. *United States* v. *Hodson,* 10 Wall. 395,

406, 19 L. ed. 937, 939; *United States* v. *Stowell,* 133 U. S. 1, 12, 33 L. ed. 555, 558, 10 Sup. Ct. Rep. 244; *Lauer* v. *District of Columbia,* 11 App. D. C. 453, 457.

The licensing act contemplates two classes of proprietors of vehicles kept for hire.

The first comprehends all of those who may keep one or more vehicles in the public streets and places, subject to call by the public generally, and to service at the rates fixed by public regulation. The drivers of these are required to wear badges indicating their public calling. The second embraces those who own establishments where carriages are kept for hire, or are kept or stored for others. Neither charges for hire nor storage are regulated or fixed by law. Their business is substantially that of the ordinary livery stable keeper.

Those of the first class are required to pay a license tax of $9 per annum for each horseless vehicle so owned and used.

Those of the second class pay a license tax of $25 per annum, where they keep a barn or garage in which there are kept ten carriages or less than ten, and $2 for each carriage in addition to ten. This tax is upon the owner of the establishment, graded merely by the number of carriages kept therein, and applies whether the carriages are owned and kept for hire by him, or merely kept or stored for other owners. The owner of one of those kept therein may be using it as a public hackney carriage. Paragraph 13 does not declare, however, that this tax shall be in lieu of all other taxes upon said carriages, and apparently to avoid such a construction it provides that it shall not be so construed as to exempt any vehicle using the public stands from paying the additional license tax of paragraph 11.

The apparent intention of Congress was to compel the owners of all carriages kept for hire, other than those kept in the particular barn or garage licensed under paragraph 13, to pay the license tax per carriage imposed by paragraph 11. The imposition of that tax is not limited to those carriages kept for hire only at the public stands established by law. We see no reasonable grounds for inferring an intention that the owner of a barn or garage might maintain a stand, convenient to the general

public, away from the place of his licensed business, and there-from, at the call of the general public, serve them with hackney carriages in competition with those who pay the higher license tax imposed upon all other owners of such carriages. To permit this would destroy that equality and uniformity of taxation which it is the policy of all laws to preserve as far as practicable.

In view, then, of what we consider to have been the general intention of Congress as regards the licensing of public carriages, we think that the words "public stands," used in the proviso aforesaid, are not to be strictly construed and limited to the technical public stands created by a regulation of the commissioners. The license act, itself, makes no provision for the maintenance of regular public stands for hackney coaches. They have been designated from time to time by the authority of other statutes delegating municipal powers to the commissioners.

We are of the opinion that the space occupied by the Taxicab Company on the grounds and within the building of the Terminal Company is a public stand within the meaning and scope of the proviso. It is true that space is the private property of the Terminal Company, which it is not bound to open to general public use; and it had the right to contract for its exclusive use by the Taxicab Company, to subserve the convenience and comfort of passengers arriving in, and departing from, the railway station. *Donovan* v. *Pennsylvania Co.* 199 U. S. 279, 295, 50 L. ed. 192, 199, 26 Sup. Ct. Rep. 91. It had the power to maintain the space as a stand for those particular carriages only in the exercise of its public calling, and as an aid to the performance of its public duties, which thereby became affected with a public use, subject only to the right indicated above. By its uses it became a public place, notwithstanding the limitation upon other uses. The Taxicab Company, licensed to keep carriages for hire at a particular establishment only, kept its carriages standing in this space for hackney, and not livery, service; and from there it not only served railway passengers, but also, as shown by the evidence in this case, other persons than arriving and departing railway passengers.

We can come to no other conclusion in giving effect to the

general intention of Congress, than that the carriages of the Taxicab Company, kept for hire in the building of the Terminal Company, are taxable as such by the terms of paragraph 11, and that they are not exempted from said tax within the proper meaning of the proviso to paragraph 13.

The order quashing the information will therefore be reversed with costs, and the cause remanded for further proceedings not inconsistent with this opinion.       *Reversed.*