854 So.2d 758 (2003)
Jorge GARCIA, Appellant,
v.
STATE of Florida, Appellee.
No. 2D02-874.
District Court of Appeal of Florida, Second District.
September 3, 2003.
*760 James Marion Moorman, Public Defender, and Carol J.Y. Wilson, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and John M. Klawikofsky, Assistant Attorney General, Tampa, for Appellee.
CANADY, Judge.
Jorge Garcia appeals his conviction for possession of methamphetamine. Because we conclude that none of the issues raised by Garcia justify reversal of his conviction, we affirm the judgment against him.

I. FACTS
In the early morning hours on June 9, 2001, Pasco County Deputy Sheriff Joseph Irizarry observed Garcia driving a truck. Garcia's vehicle first came to Deputy Irizarry's attention when it passed through a flashing yellow light without slowing down. Thereafter, Deputy Irizarry saw Garcia's vehicle go off the road while making a right-hand turn and then weave off the roadway onto the grassy shoulder three times. After observing this behavior and following Garcia's vehicle for approximately a quarter of a mile, Deputy Irizarry decided to stop Garcia's vehicle.
After the vehicle stopped and Deputy Irizarry approached the driver's window of the vehicle, he smelled alcohol and observed that Garcia's eyes were bloodshot and that Garcia's speech was slurred. Garcia was alone in the truck. Deputy *761 Irizarry proceeded to conduct field sobriety tests. After conducting the tests, Deputy Irizarry arrested Garcia for driving under the influence.
In the meantime, Deputy Wilkins and Deputy Banner arrived at the scene. In the course of searching Garcia's truck incident to his arrest, Deputy Wilkins found an itemwhich looked like a softball wrapped in black electrical tapeunderneath the passenger's seat of Garcia's truck. Garcia told the deputies at the scene that he did not know what the item was, that he had not seen it before, and had not known that it was in the truck. He also stated that his truck had recently been stolen and that some friends had been in his truck earlier that night. Subsequent tests conducted by the FDLE crime laboratory determined that an off-white powder contained within the item was a mixture containing methamphetamine and a cutting agent.
Garcia was charged by information with trafficking in methamphetamine, driving under the influence, and obstructing or resisting an officer without violence. In his testimony at trial, Garcia stated that the night of his arrest he had the truck at a party from about 7:00 p.m. until 2:00 a.m. His truck was used at the party for playing CDs. Garcia also used the truck on two occasions during the party to take friends to buy beer. Garcia denied using drugs. He testified that he did not put the tape-covered item in the truck, know it was there, or know what it contained. Finally, Garcia testified that his truck had been stolen on Wednesday, May 31, from a shop where he had taken it. The truck was recovered the following Monday in a dirty condition and containing items that did not belong to Garcia. After recovering the truck, he returned it to the shop for the installation of a stereo. When he later picked up the truck, it was clean.
Garcia was found guilty of the driving under the influence charge and guilty of the lesser-included crime of possession of methamphetamine on the trafficking offense. He was found not guilty of the obstructing or resisting charge.
During the trial, at the close of the State's evidence and at the close of all the evidence, Garcia moved for a judgment of acquittal on the trafficking charge pursuant to Florida Rule of Criminal Procedure 3.380(a). The motion was denied. After Garcia was convicted, he renewed his motion for judgment of acquittal pursuant to rule 3.380(c). Once again, the motion was denied. Garcia also moved for a new trial pursuant to Florida Rule of Criminal Procedure 3.580. That motion was also denied.

II. ISSUES ON APPEAL
Garcia raises several issues which lack merit and which we will not address. Two issues raised by Garcia deserve discussion: (1) the claim that the trial court erred when it denied Garcia's motion for judgment of acquittal, and (2) the claim that the trial court gave an erroneous jury instruction and therefore should have granted his motion for new trial. Garcia's motion for judgment of acquittal was based on his contention that the evidence presented at trial was insufficient to establish that he had knowledge of the illicit nature of the substance contained in the softball-shaped item found in his truck. On the jury instruction issue, Garcia contends that the trial court erred when it failed to give an instruction that the lesser-included offense of possession of methamphetamine can be proven only if the defendant had knowledge of the illicit nature of the substance. Garcia requested such a guilty knowledge instruction on the trafficking charge, but not on the possession charge. Garcia argues that the request on the trafficking *762 charge was sufficient to apprise the trial court of the need for a guilty knowledge instruction on the possession charge. He further contends that even if that request was insufficient to preserve the error the trial court's failure constitutes fundamental error.

III. ANALYSIS

A. Motion for Judgment of Acquittal Based on Insufficient Proof of Possession
In this caselike many other drug possession cases where the evidence might not be sufficient to establish actual possessionthe prosecution presented its case based on an alternative theory of constructive possession. Actual possession requires that the drugs be "in the hand of or on the person or in a bag or container in the hand of or on the person, or ... so close as to be within ready reach and ... under the control of the person." In re Std. Jury Instr. in Crim. Cases, 543 So.2d 1205, 1218 (Fla.1989); see also McCoy v. State, 840 So.2d 455 (Fla. 4th DCA 2003). In constructive possession cases, proof of the defendant's possession turns on the circumstances surrounding the location of the drugs when they are found and a resulting inference concerning the defendant's control of the drugs.
The existence of constructive possession of an item by a defendant depends on whether there is "such a nexus or relationship between the defendant and the goods that it is reasonable to treat the extent of the defendant's dominion and control as if it were actual possession." United States v. Casalinuovo, 350 F.2d 207, 209 (2d Cir.1965). To establish that a defendant is guilty of possession of illicit drugs under a constructive possession theory it is necessary to prove "(1) the defendant's ability to exercise dominion and control over the [drugs]; (2) his knowledge of the presence of the [drugs]; and (3) his awareness of the illicit nature of the [drugs]." Elias v. State, 526 So.2d 1014, 1015 (Fla. 2d DCA 1988).
"[K]nowledge of contraband found within an automobile ... is generally inferred or presumed from one's exclusive possession [of the automobile] unless and until proven otherwise." State v. Paleveda, 745 So.2d 1026, 1028 (Fla. 2d DCA 1999) (holding that trial court erred in dismissing cocaine possession charge where undisputed facts showed that defendant was "in exclusive control and possession of an automobile in which cocaine was found next to the driver's seat," thus establishing a "prima facie case of actual possession of cocaine"). This is based on the eminently sensible recognition of the reality that persons who lay claim to a valuable possessionsuch as illegal drugsare quite unlikely to place that valued possession in a motorized conveyance which is under the exclusive dominion and control of another and which may speedily bear it away to a place from which it cannot be recovered. It is thus reasonable to assume that a person who is in exclusive possession and control of a motor vehicle bears responsibility for such items of value that are located in the vehicle. Cf. Green v. State, 667 So.2d 208, 211 (Fla. 2d DCA 1995) (holding that where "the [defendant] jointly possessed the car with his brother, his knowledge of the presence of cocaine... could not be inferred but had to be established by independent proof"); State v. Oxx, 417 So.2d 287, 291 (Fla. 5th DCA 1982) (stating that "proof of non-exclusive constructive possession alone is insufficient to justify an implication of knowledge," and that in such cases "the State must present some corroborating evidence of knowledge to establish a prima facie case").
*763 A defendant's constructive possession of drugs based on exclusive possession of an automobile in which the drugs are located is also sufficient to raise a presumption that the defendant had knowledge of the illicit nature of the drugs. The presumption of knowledge of the illicit nature of the substance is predicated on the common sense proposition that ordinarily individuals who possess a substance will know what the substance is, along with the basic legal principle that individuals are charged with knowledge of what the law requires or prohibits. See State v. Medlin, 273 So.2d 394, 397 (Fla. 1973) (holding that where defendant was charged with unlawful delivery of barbiturate or central nervous system stimulant without a valid prescription the "State was not required to prove knowledge or intent since both were presumed from the doing of the prohibited act"); State v. Williamson, 813 So.2d 61, 65 (Fla.2002) (stating that Medlin presumption is "still applicable to both actual and exclusive constructive possession cases"); United States v. Hodson, 77 U.S. 395, 409, 19 L.Ed. 937 (1870) ("Every one is presumed to know the law"). The presumption of guilty knowledge which arises where it is established that the defendant had actual possession or exclusive constructive possession of the drugs may, of course, be overcome by evidence tending to show a lack of guilty knowledge. See Williamson, 813 So.2d at 64 (stating that Medlin presumption "may not be sufficient" to sustain a conviction "when there is other evidence which tends to negate the presumption").
Garcia's defense was based on his assertion that others had access to his truck and the opportunity to place the drugs there without his knowledge. But the fact that individuals other than the defendant may have previously had access to the automobile in which the drugs are found will not necessarily negate the presumption that the defendant was aware of the presence and the illicit nature of the drugs. In Parker v. State, 641 So.2d 483 (Fla. 5th DCA 1994), the defendant, who had been convicted of possession of cocaine, argued that, although he was the driver and sole occupant of the motor vehicle in which the drugs were found, there was inadequate proof of knowing possession to support his conviction. The defendant specifically relied on his testimony that earlier on the day he was arrested his nephew had possession of the vehicle in which the drugs were found. The court rejected the defendant's argument: "The jury apparently did not believe that [the defendant's] nephew had possession of his vehicle or, if he had such possession, that he left the cocaine behind. The question of exclusive possession is properly determined by the jury." Id. at 484 (citing Jordan v. State, 548 So.2d 737 (Fla. 4th DCA 1989)); Demps v. State, 795 So.2d 141, 141-42 (Fla. 5th DCA 2001) (citing Parker in support of conclusion that jury can properly conclude that defendant who is "driver and sole occupant of a vehicle" is in possession of cocaine found even when "there is testimony that others have occupied the vehicle earlier in the day"); see also Lee v. State, 835 So.2d 1177, 1180 (Fla. 4th DCA 2002) (concluding that defendant's "presence, as driver and sole occupant of the vehicle at the time of his arrest, is sufficient to show he exclusively possessed the vehicle, creating an inference of his dominion and control and guilty knowledge of the marijuana" found in vehicle).
Garcia was certainly entitled to defend against the State's contention that he was in possession of the drugs by adducing facts to show that others previously had access to his truck and could have *764 placed the drugs there without his knowledge. But it was by no means unreasonable for the jury to reject Garcia's defense. There is no basis for disturbing the jury's determination concerning this factual issue.
The courts should not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the [State] can be sustained under the law. Where there is room for a difference of opinion between reasonable men as to the proof or facts ... it is [the jury's] conclusion ... that should prevail.
Lynch v. State, 293 So.2d 44, 45 (Fla.1974); see also Perry v. State, 801 So.2d 78, 84 (Fla.2001) ("The trial court's finding denying a motion for judgment of acquittal will not be reversed on appeal if there is competent, substantial evidence to support the jury's verdict."). Accordingly, the trial court's denial of Garcia's motion for judgment of acquittal must be affirmed.

B. Motion for New Trial Based on Failure to Give Guilty Knowledge Instruction
It is a basic principle of the law that a defendant in a criminal case is entitled to a proper instruction to the jury concerning the elements of the crime charged against him. See Gerds v. State, 64 So.2d 915, 916 (Fla.1953) (discussing defendant's "right to have a[c]ourt correctly and intelligently instruct the jury on the essential and material elements of the crime charged"). In this case, knowledge of the illicit nature of the substance was indisputably an element of the crime of drug possession at the time the offense charged against Garcia was allegedly committed. See Chicone v. State, 684 So.2d 736, 737 (Fla.1996) (holding that "guilty knowledge is an element of possession of a controlled substance ... and possession of drug paraphernalia").
The State relies on section 893.101, Florida Statutes (2002), which was adopted by the legislature in response to Chicone, to justify the trial court's failure to give a guilty knowledge instruction on the possession charge. Under that statute "knowledge of the illicit nature of a controlled substance is not an element" of drug offenses, but lack of such knowledge is an affirmative defense. § 893.101(1). These statutory provisions are, however, not applicable to this case since they became law after the alleged commission of the offense by Garcia. See Norman v. State, 826 So.2d 440, 441 (Fla. 1st DCA 2002) (holding that application of section 893.101 to offense occurring before enactment of statute would be "repugnant to article X, section 9, of the Florida Constitution, which prohibits retroactive application of statutes in criminal proceedings"); Blunt v. State, 831 So.2d 770, 772 (Fla. 4th DCA 2002) (holding that section 893.101, which "became effective as of May 13, 2002, may not be applied retroactively" to an offense which occurred before that date); Thomas v. State, 844 So.2d 723, 725 (Fla. 5th DCA 2003) (citing Blunt and Norman and holding that section 893.101 cannot be applied retroactively). Accordingly, the trial court was required to give a guilty knowledge instruction on the methamphetamine offenses, including the lesser-included possession offense.
The trial court did give an instruction concerning the trafficking charge against Garcia which included the guilty knowledge element. The court specifically instructed the jury that the defendant's knowledge "that the substance was methamphetamine or a mixture containing methamphetamine" was a material element of the offense of trafficking. The trial court then gave an instruction concerning *765 actual and constructive possession, which included this statement concerning nonexclusive constructive possession:
If a thing is in a place over which the person does not have control, in order to establish constructive possession, the State must prove the person has control over the thing, knowledge of the thing which was in the person's presence, and the knowledge of the illicit nature of the thing.

(Emphasis supplied.) After giving the instruction regarding the elements of the trafficking offense and the requirements for establishing possession, the trial court proceeded to give an instruction on the elements of the simple possession offense. That instruction omitted any reference to the requirement that the defendant have knowledge of the illicit nature of the substance. After giving the instruction on the elements of possession, the trial court did, however, state that the prior instruction regarding the "definition of possession ... applies to the lesser charge as it did to the greater charge."
During the course of its deliberations, the jury submitted the following question to the court: "What is the difference between trafficking and possession of methamphetamine?" In response to the jury's inquiry, the trial court read the jury the instruction it had previously given concerning the elements of the possession offense and the trafficking offense. The court did not, however, repeat the instruction it had previously given concerning the meaning of actual and constructive possession.
The instruction given by the trial court on the possession offense was erroneous because it omitted an essential element of the crimenamely, knowledge of the illicit nature of the substance. The State argues that the reference to knowledge of the illicit nature of the substance contained in the instruction on the definition of actual and constructive possession was sufficient to apprise the jury of the guilty knowledge element of the possession offense. This argument fails because the statement regarding knowledge of the illicit nature of the substance contained in the definition of actual and constructive possession was limited to circumstances involving nonexclusive constructive possession. Nothing is said in the definition regarding the requirement for knowledge of the illicit nature of the substance in circumstances involving either actual possession or exclusive constructive possession. Since the State's theory of the case was based on exclusive constructive possessionor arguably, actual possession the instruction was clearly inadequate and erroneous.
But the fact that an error occurred with respect to the jury instruction does not mean that a conviction obtained after the giving of the erroneous instruction will necessarily be reversed. Section 924.051(3), Florida Statutes (2001), provides:
An appeal may not be taken from a judgment or order of a trial court unless a prejudicial error is alleged and is properly preserved or, if not properly preserved, would constitute fundamental error. A judgment or sentence may be reversed on appeal only when an appellate court determines after a review of the complete record that prejudicial error occurred and was properly preserved in the trial court or, if not properly preserved, would constitute fundamental error.
See also Fla. R.Crim. P. 3.390(d). Garcia neither requested an instruction concerning guilty knowledge on the possession offense nor objected to the trial court's failure to give such an instruction. And Garcia's request for a guilty knowledge *766 instruction on the trafficking charge was not sufficient to preserve error with respect to the possession offense. Since Garcia did not properly preserve the error with respect to the jury instruction, his conviction can only be reversed and a new trial ordered if the error was fundamental.[1]
An error is not fundamental "unless it reaches down into the [legality] of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the error alleged." Hamilton v. State, 88 So.2d 606, 607 (Fla.1956) (citing statement in Brown v. Mississippi, 297 U.S. 278, 286, 56 S.Ct. 461, 80 L.Ed. 682 (1936), that fundamental error is "a wrong so fundamental that it made the whole proceeding a mere pretense of a trial"). Fundamental error is error that "permeate[s] or saturate[s] the trial with such basic invalidity" as to justify reversal even in the absence of a properly preserved objection. Brown v. State, 124 So.2d 481, 484 (Fla.1960). "[F]undamental error doctrine should be used `very guardedly.'" Hopkins v. State, 632 So.2d 1372, 1374 (Fla.1994) (citing Sanford v. Rubin, 237 So.2d 134, 137 (Fla.1970) ("The [a]ppellate [c]ourt should exercise its discretion under the doctrine of fundamental error very guardedly.")). Accordingly, "rarely will an error be deemed fundamental, and the more general rule requiring a contemporaneous objection to preserve an issue for appellate review will usually apply." F.B. v. State, 852 So.2d 226, 2003 WL 21555122 (Fla. July 11, 2003).
In State v. Delva, 575 So.2d 643 (Fla. 1991), the court addressed the issue of when a trial court's unpreserved error in failing to give proper instructions concerning the elements of the crime charged against the defendant will constitute fundamental error. The court articulated the basic rule that the failure to give a proper instruction concerning a particular element of the crime charged is a fundamental error only if the element was disputed at trial: "Failing to instruct on an element of the crime over which the record reflects there was no dispute is not fundamental error[,] and there must be an objection to preserve the issue for appeal." Id. at 645.
The Delva court applied this general principle to facts that are closely analogous to the facts of the case now under review. These are the basic facts of Delva:
[A] package of cocaine was discovered under the front seat of the car Delva was driving.... Delva's defense was that he did not know the package of cocaine was even in his car. He presented testimony that the car was jointly owned by himself and his fiancee and the two of them as well as his brother all drove the car. He further presented testimony that his brother drove the car on the day of the arrest.
Id. The court focused specifically on the fact that "[t]here was no suggestion that Delva was arguing that while he knew of the existence of the package he did not know what it contained." Id. This led the court to the conclusion that "[b]ecause *767 knowledge that the substance in the package was cocaine was not at issue as a defense, the failure to instruct the jury on that element of the crime could not be fundamental error." Id.
Of course, it is true that in a certain sense Delva's defense necessarily involved a denial that he knew the nature of the substance in the package found in the car. He could not possibly know the nature of a substance if he did not know the substance existed. But this logical implication of the defense raised by Delva did not mean that Delva's knowledge of the nature of the substance was a disputed issue at his trial. Since Delva's theory of defense was predicated on his assertion that he had no knowledge of the existence of the package containing cocaine which the police discovered in the car he was driving, the court's failure to give an instruction concerning knowledge of the illicit nature of the substance could not "`reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'" Id. at 644-45 (quoting Brown, 124 So.2d at 484). Delva's conviction hinged on the jury's conclusion regarding the truthfulness of Delva's assertion that he did not know the package even existed. The jury's conclusion on that point was in no way affected by the trial court's failure to instruct the jury on the guilty knowledge element. Accordingly, the trial court's error in Delva could not be fundamental.
The parallels between Delva and the case under review are striking. Like the defendant in Delva, Garcia's "defense was that he did not know the package of [illegal drugs] was even in his [vehicle]." Delva, 575 So.2d at 645. Like the defendant in Delva, Garcia sought to show that others had access to his vehicle and could have placed the drugs there. And in the instant case, just as in Delva, "[t]here was no suggestion that [the defendant] was arguing that while he knew of the existence of the package [of drugs] he did not know what it contained." Id. at 645. Although Garcia did assert that he did not know what was in the softball-shaped item found in his vehicle, that assertion was nothing more than a statement of the logical implication of his defense based on lack of knowledge that the item existed. As in Delva, the theory of defense advanced by Garcia was not affected by the absence of a guilty knowledge instruction. Therefore, just as there was no fundamental error in Delva, there is no fundamental error here.
We do note that, while in Delva the instructions given to the jury made no mention of the element of knowledge of the illicit nature of the substance, in the present case both the instruction on the elements of the trafficking charge and the definition of nonexclusive constructive possession did make reference to the guilty knowledge requirement. Thus, in the present case, unlike Delva, the instructions given to the jury were not simply incomplete but were expressly misleading. The juxtaposition of the different instructions in this case could have affirmatively created an impression among the jury members that guilty knowledge would be necessary to establish guilt for trafficking and for nonexclusive constructive simple possession cases but not for actual simple possession and exclusive constructive simple possession cases. But this difference in the factual context between the present case and Delva does not override the fundamental similarity of the two cases which arises from the theory of defensethe defendant's lack of knowledge of the existence or presence of the drugsemployed in both cases. Under the court's holding in Delva, Garcia's reliance on that theory *768 of defense negates his claim of fundamental error.
We are aware that in Scott v. State, 808 So.2d 166, 171 (Fla.2002), the supreme court held that the "requirement that an instruction must be given [on each element of the crime] does not depend on the defense espoused." In Scott, the defendant was charged with possession of illegal drugs in a correctional facility. The defense requested that a guilty knowledge instruction be given, but the trial court refused to do so. The Fifth District affirmed the trial court, relying in part on the conclusion "that any failure to give the requested instruction was harmless error because Scott's defense was not based on lack of knowledge of the illicit nature of the substance." Id. at 168-69. The supreme court concluded that the failure to give the requested instruction was an error and that the error was not harmless. The court stated: "Since the jury is entitled to be instructed on the elements of the offense, it cannot be harmless error to fail to do so especially when the omission is brought to the attention of the trial court by the defendant." Id. at 170-71. In reaching this conclusion, the Scott court also observed that the defendant's "argument that he did not possess the drugs and had no knowledge of the drug's presence... encompasses the argument that he was unaware of the illicit nature of the substance." Id. at 171.
Scott makes clear that any defendant who requests an instruction concerning an element of the offense charged against him is entitled to have a proper instruction given to the jury with respect to that element of the crime, even if the defendant's theory of defense is not predicated on that particular element. Scott also makes clear that the failure to give such a requested instruction is not subject to harmless error analysis. But Scott does not address the question of fundamental error. Since the defendant in Scott had made a requestalbeit oral, rather than writtenfor a guilty knowledge instruction, the court did not reach the issue of fundamental error. Id. at 174 (Harding, J., dissenting).
Scott's holding that the failure to give a requested instruction on an essential element of a crime is necessarily harmful error simply cannot be read as a holding that the failure to give an unrequested instruction on an essential element of a crime is necessarily fundamental error. The fact that a properly preserved error on a particular issue is deemed harmful does not mean that an unpreserved error on the same issue would be fundamental. Indeed, to conclude that an error is fundamental simply because it is harmful would effectively abolish the general requirement that errors be properly preserved for appellate review. See Reed v. State, 837 So.2d 366, 369, 370 (Fla.2002) (applying Delva's "distinction regarding fundamental error between a disputed element of a crime and an element of a crime about which there is no dispute," and stating that while "all fundamental error is harmful error ... not all harmful error is fundamental").
We are mindful of the apparent tension between the holding of Delva and statements made by the court in Scott. In particular, Scott's pronouncement that an argument that the defendant was without knowledge of the presence of drugs "encompasses the argument that he was unaware of the illicit nature of the substance," 808 So.2d at 171, seems inconsistent with the holding of Delva that the defendant's reliance on the argument that he was unaware of the existence of the drugs did not place the guilty knowledge element at issue. But the resolution of any tension between Scott and Delva is not a task for this *769 court. Any such tension can only be resolved by a holding of the supreme court in a proper case. See Puryear v. State, 810 So.2d 901, 905 (Fla.2002) (stating that the "[supreme court] does not intentionally overrule itself sub silentio," and that "[w]here a court encounters an express holding from [the supreme court] on a specific issue and a subsequent contrary dicta statement on the same specific issue, the court is to apply [the supreme court's] express holding in the former decision until such time as [the supreme court] recedes from the express holding"); see also Lee, 835 So.2d at 1181 (noting that Delva and Scott "may conflict in this regard," but holding that Delva remains binding precedent); Davis v. State, 839 So.2d 734, 735 (Fla. 4th DCA 2003) ("We do not agree with appellant that there is a conflict between Scott and Delva because in Scott the error was preserved.").
Delva remains an authoritative and binding holding by the supreme court on the issue of fundamental error in the context of inadequate jury instructions on the elements of the crime charged against a defendant. We thus conclude that Scott is not relevant here but that Delva controls our disposition of this case and compels the conclusion that there was no fundamental error.
District courts have with varying results continued to apply Delva's distinction between the failure to instruct on an element that is disputedwhich constitutes fundamental errorand the failure to instruct on an element that is not disputedwhich does not constitute fundamental error. See Starling v. State, 842 So.2d 992, 993 (Fla. 1st DCA 2003) (holding that failure to give guilty knowledge instruction was not fundamental error where "[t]he only issue raised during trial was that [defendant] was not the person who sold the cocaine"); Davis, 839 So.2d at 735 (holding that failure to give guilty knowledge instruction was not fundamental error in case where "the only position taken by the defendant was that he was not the person who sold the cocaine to the informant"); Ozell v. State, 837 So.2d 559, 560 (Fla. 3d DCA 2003) (holding that there was no fundamental error in cocaine sale prosecution where the defense contended both that (1) "the police officers were mistaken in their identification of the defendant" and that (2) there was a reasonable doubt concerning the defendant's guilt because officers "could not actually see" object which the alleged perpetrator handed to individual who subsequently dropped a ziploc baggie containing cocaine); Lee, 835 So.2d at 1177 (holding that failure to give guilty knowledge instruction was not fundamental error in drug possession case); Johnson v. State, 833 So.2d 252, 253 (Fla. 4th DCA 2002) (holding that failure to give guilty knowledge instruction was fundamental error in case where defendant said "that he had no knowledge of the contents of the vehicle" in which illegal drugs were found, but where "both sides acknowledged that the issues were whether [the defendant] had control of the drugs and whether he had knowledge of the illegality of the substances"); Blunt, 831 So.2d at 771 (holding that failure to give guilty knowledge instruction was fundamental error where defendant "denied knowledge of [the existence of a] pill bottle and the crack cocaine" it contained and prosecutor argued that defendant "knew what the substance was").
The recent decision in Goodman v. State, 839 So.2d 902 (Fla. 1st DCA 2003), adopts a different view of Scott than the one we have adopted. Goodman cites Scott in support of its holding that failure to give a guilty knowledge instruction was fundamental error in a case where the defendant "denied knowledge that the cannabis was present," and thus "placed in dispute the essential element of knowledge *770 of the illicit nature of the substance." Goodman, 839 So.2d at 903. Goodman makes no reference to Delva. But, as we have discussed, Delva makes clear that for purposes of determining whether there was fundamental errora defendant's denial of knowledge of the presence or existence of drugs does not place knowledge of the illicit nature of the drugs in dispute. Our decision here is thus in direct conflict with the decision in Goodman, and we certify the conflict pursuant to article V, section 3(b)(4), Florida Constitution, and Florida Rule of Appellate Procedure 9.030(a)(2)(A)(vi).[2]

IV. CONCLUSION
Because we conclude that the trial court properly denied Garcia's motion for judgment of acquittal as well as his motion for new trial, we affirm the judgment entered against Garcia.
Affirmed; conflict certified.
FULMER and CASANUEVA, JJ., Concur.
NOTES
[1] We note the statements in Chicone that "the existing jury instructions are adequate in requiring `knowledge of the presence of the substance'" but that the "trial court should expressly indicate to jurors that guilty knowledge means the defendant must have knowledge of the illicit nature of the substance allegedly possessed" when "specifically requested by a defendant." 684 So.2d at 745-46. In light of the express holding of Chicone and the fact that a guilty knowledge instruction was requested there, these statements cannot properly be understood as establishing that the failure to give a guilty knowledge instruction will be reversible error only when the instruction has been requested. Chicone does not address the issue of fundamental error.
[2] We also note that the reasoning in Blunt appears to be inconsistent with our understanding of Delva.