CARNEGIE, PHIPPS & CO., Limited, v. HULBERT et al.

(Circuit Court of Appeals, Eighth Circuit. September 30, 1895.)

No. 475.

1. Bonds—Residence of Sureties—Iowa Statutes.

　　The provision of section 327 of McClain's Code of Iowa, that the "surety in every bond provided for in this Code must be a resident of this state," does not apply to bonds given under Act April 7, 1884 (which is subsequent to and independent of the Code), for the purpose of releasing mechanics' liens or preventing the filing thereof upon public buildings or improvements.

2. Same—Informal and Irregular Bonds.

　　The fact that a bond given under the requirements of the act of April 7, 1884, is not made to the county owning the improvement, and

does not contain a penalty, as required by the statute, but, instead thereof, runs directly to the parties whose mechanics' liens are to be released thereby, and to all other parties then or thereafter having a right to file mechanics' liens, for the full amount which may be due upon their claims, does not render the bond invalid; for a bond given to satisfy the requirement of a statute may be binding on the parties as a common-law bond when not executed with the formalities or in the mode prescribed by the statute.

3. SAME—ESTOPPEL.

A bond given under the Iowa statute of April 7, 1884, to procure the release of certain mechanics' liens filed against a public building, and to prevent the filing of other liens, was not executed with the formalities or in the mode prescribed by the statute. In an action thereon the jury found specially that the defendants "executed and delivered and filed" the bond "for the purpose of preventing the plaintiffs from filing" a mechanic's lien; that the plaintiffs relied upon the bond, and assented to its validity under the statute; that they were thereby induced to abstain from filing mechanics' liens, and, in consequence, lost their right to procure a lien. *Held*, that the sureties on the bond were estopped to deny its validity.

4. LIMITATION OF ACTIONS—AMENDMENT TO SHOW JURISDICTION.

Where the judgment of a federal court is reversed on error because the complaint does not show the diverse citizenship necessary to sustain the jurisdiction, and thereafter an amendment is allowed below, which cures this defect without introducing any new cause of action, the suit is deemed to have been commenced at the date of its original institution, and not at the date of the amendment.

In Error to the Circuit Court of the United States for the District of Nebraska.

On the 26th of February, 1890, Richards & Co., a firm of building contractors, entered into a contract with the county of Montgomery, Iowa, for the erection of a courthouse for the county. Afterwards Richards & Co. entered into several contracts with Carnegie, Phipps & Co., the plaintiffs in error, whereby the plaintiffs in error undertook to furnish and put in place materials for building the courthouse. On the 2d day of February, 1891, while the plaintiffs in error were engaged in performing these contracts, and before the same had been completely finished and performed, and for the purpose of preventing the plaintiffs in error from filing a claim against the county of Montgomery for the value of the materials furnished by them, Richards & Co., acting under a statute of Iowa authorizing them to do so, executed, delivered, and filed with the county treasurer of Montgomery county their bond, with J. H. Hulbert, E. A. Blum, H. B. Drexel, Albert Foll, and E. J. Refregier, the defendants in error, as their sureties. The following is a copy of the bond:

"Whereas, Richards & Company, contractors, of Omaha, Nebraska, have heretofore entered into a contract with Montgomery county, Iowa, for the purpose of erecting a courthouse for said county at Red Oak Junction, Iowa; said Richards & Company agreeing to furnish all labor and materials used in erecting said courthouse and to pay for the same; and whereas, said Richards & Company have proceeded with the erection of said courthouse under said contract with said county; and whereas, large quantities of labor and material have been used, and are to be used in said courthouse, the roof of said courthouse being now put in place; and whereas, the laws of Iowa provide that all persons furnishing labor and materials in the erection of public buildings, such as the courthouse above mentioned; and whereas, on the 28th day of January, 1891, the Northwestern Terra Cotta Company filed a claim against said courthouse fund for materials furnished Richards & Co., for use in constructing said courthouse; and whereas, other furnishers of labor and materials may hereafter claim the right to file such claim against said courthouse fund: Now, therefore, we, Richards &

Co., as principals, and H. P. Drexel, E. J. Refregier, E. A. Blum, J. H. Hulbert, and Albert Foll, as sureties, for the purpose of releasing the claim now on file with the auditor of Montgomery county, Iowa, in favor of the Northwestern Terra Cotta Company, which claim is a mechanic's lien against a public corporation, to wit, Montgomery county, Iowa, and for the purpose of preventing the filing of any mechanic's lien for material furnished or work and labor performed in the building and erection of said courthouse, for which the persons furnishing said material and performing said labor would, under the laws of the state of Iowa, be entitled to file a mechanic's lien against said public corporation to wit, Montgomery county, Iowa, and for the use and benefit of the said Northwestern Terra Cotta Company, and for the use and benefit of such other persons who now have or shall hereafter have a right to file mechanic's lien against said public corporation, Montgomery county, for materials furnished or work and labor performed, and for the purpose of paying any and all sum or sums found to be due the said Northwestern Terra Cotta Company from Richards & Company, aforesaid, and for the purpose of paying any and all sums due from said Richards & Company to any and all persons for materials furnished or to be furnished, or for work and labor done or to be done, for which any of said persons have now or may hereafter have a right to file a mechanic's lien against said public corporation, Montgomery county, Iowa, for said labor, work, or material done or furnished,—this obligation is executed, and we bind ourselves and assigns to pay any such sum or sums so found to be due said Northwestern Terra Cotta Company, or any person or persons, as hereinbefore mentioned. This obligation is executed for the use and benefit of all persons who now have, or may hereafter have, a right to file a mechanic's lien against Montgomery county, Iowa, under and by virtue of the provisions of sections 3326, 3327, 3328, 3329, of McClain's Annotated Code of Iowa (edition 1888), being the Laws of the 20th G. A., chapter 179, sections 1 to 4, inclusive, for materials furnished or to be furnished, or work and labor done or to be done, in the building and erection of the courthouse at Red Oak Junction, Montgomery county, said courthouse being erected and built by the said Richards & Co. aforesaid.

Richards & Co.
"H. P. Drexel.
"E. J. Refregier.
"E. A. Blum.
"J. H. Hulbert.
"Albert Foll.

"Witness: B. G. Burbank."

The bond was indorsed as follows:

"It appearing to me that the Northwestern Terra Cotta Company of Chicago, Ill., has now and claims the right to file a mechanic's lien or claim against Montgomery county, for materials furnished in the building of the courthouse for said county; and it also appearing to me that Carnegie, Phipps & Co. claim to have the right now and hereafter to file a lien against said county for materials furnished and labor performed and to be hereafter furnished, and each of said corporations and persons having consented in writing by me now held, that nonresident sureties may file a bond. Now as to the Northwestern Terra Cotta Company and Carnegie, Phipps & Co., the within and foregoing bond is now by me filed and approved this February 9th, 1891.                                                     Joel Carey,
"Treasurer of Montgomery County, Iowa."

The following is the act in pursuance of which, the bond recites, it was given:

"Chapter 179. Acts of the 20th Assembly. An act to protect sub-contractors for labor performed and material furnished for public buildings and improvements (additional to ch. 100 of the Acts of the Sixteenth General Assembly).

"Be it enacted by the general assembly of the state of Iowa.
"Section 1. Every mechanic, laborer or other person who as sub-contractors, shall perform labor upon, or furnish materials for the construction

of any public building or bridge or other improvements not belonging to the state, shall have a valid claim against the public corporation constructing such building, bridge or other improvements, for the value of such services and material, in an amount not in excess of the contract price·to be paid for the building, bridge or other improvements, nor shall any such corporation be required to pay any such claims at any time before, or in any manner different from that provided in the principal contract.

"Sec. 2. Such claim shall be made by filing with the public officer through whose order the payment is to be made, an itemized and sworn statement of the demand within thirty (30) days after the performance of the last labor or the furnishing of the last portion of the material, and claims shall have priority in the order in which they shall be filed.

"Sec. 3. Any party in interest may cause the adjudication as to the amount, validity, priority and mode and time of payment of such claim by equitable proceedings in any court having jurisdiction. In such case the court may assess a reasonable sum to be taxed as attorney's fees against the party failing in such action in favor of such corporation.

"Sec. 4. The contractor may at any time release such claim by filing with the treasurer of such corporation a bond, to such corporation, for the benefit of such claimants in sufficient penalty with sureties to be approved by such treasurer, conditioned for the payment of any sum which may be found due such claimant. And such contractor may prevent the filing of such claims by filing in like manner a bond conditioned for the payment of persons who may be entitled to file such claims. Suit may be brought on said bond by any claimant within one year after the cause of action accrues, and judgment shall be rendered against the principal and sureties for any amount due said claimant. (Secs. 3326–3329, McClain's Annotated Code of Iowa.)

"Approved April 7, 1884."

The case was tried to a jury, and a special verdict taken, in which the jury found, among other things: That "about the 2d day of February, 1891, while the said plaintiffs were engaged in performing the said contracts and furnishing said material and labor, and before the same had been completely finished and performed, and for the purpose of preventing the plaintiffs from filing a claim against the county of Montgomery for the value of their material and labor, the defendants herein executed and delivered and filed with the county treasurer of Montgomery county" the bond in suit. That plaintiffs in error relied upon this bond, and assented to it as a valid bond under the laws of Iowa, and were thereby induced to abstain from filing a claim against the county of Montgomery for the value of their labor and material, and continued to perform their contracts in reliance thereon, and continued to rely thereon until the time for filing such claims under the statute of Iowa had expired, and until after Richards·& Co. had become insolvent. That the sureties in this bond were nonresidents of Iowa, and not freeholders in that state, and, at the instance and request of Richards & Co., Carnegie, Phipps & Co. waived objection.to the bond on that ground, and, at the instance and request of Richards & Co., the county treasurer then approved the bond in the manner shown by his indorsement thereon. That the plaintiffs performed their several contracts, and also furnished extra labor and material; and that, if they were entitled to recover upon their cause of action, and the facts found, they were entitled to recover the sum of $17,363.66.

Upon the coming in of the special verdict, the plaintiffs in error filed a motion for judgment against all the defendants thereon, which was overruled, and, on motion of the defendants in error, judgment on the verdict was rendered for them. These rulings of the court were duly excepted to, and are assigned as errors.

W. W. Morsman (J. M. Junkin and Smith McPherson, on the brief), for plaintiffs in error.

H. C. Brome and B. G. Burbank (A. H. Burnett and R. A. Jones, on the brief), for defendants in error.

Before CALDWELL, SANBORN and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The contention of the defendants in error is that the bond is void because it was not executed to the county as the obligee, and for a penalty, and with conditions, and was never delivered and approved, and that the sureties thereon were ineligible to become such. The plaintiffs in error maintain (1) that the bond is a good statutory bond, and (2) that, if this is not so, it is a good common-law bond, and (3) that, if it is neither a good statutory nor common-law bond, the facts found by the jury estop the defendants from contesting their liability thereon to the plaintiffs in error. It is provided by section 327 of McClain's Code of Iowa that:

"The surety in every bond provided for by this Code must be a resident of this state and worth double the sum to be secured beyond the amount of his debts, and have property liable to execution in this state equal to the sum to be secured. Where there are two or more sureties in the same bond, they must, in the aggregate, have the qualification prescribed in this section."

It is objected that the sureties, not being residents of Iowa, did not possess the qualifications required by this section, and that the bond, as to them, is void for that reason. The statute under which the bond was given is silent as to the qualification of the sureties, the only requirement being that they shall be "approved." It will be observed that the section of the Code quoted only applies to "every bond provided for by this Code," and the bond in suit was not provided for by that Code, but by an act of the legislature passed long subsequent to the adoption of the Code. The act was not even an amendment of the Code, but new and independent legislation. Moreover, if the Code requirement as to the qualification of sureties applied, the sureties would not be heard to say that they did not possess the statutory qualifications. Wright v. Schmidt, 47 Iowa, 233; Tessier v. Crowley, 17 Neb. 208, 22 N. W. 422; Jack v. People, 19 Ill. 57.

It is very earnestly contended by the counsel for the defendants in error that the bond is void because it was not executed to the county as obligee, and contains no penalty. The act recognizes two distinct classes of claimants to be affected by the giving of bonds: First, those who have filed their claims before the bond is given. This class is embraced by the first clause of the section. And, second, those who are then, or may thereafter become, entitled to file claims, but who are prevented from so doing by the filing of a bond. This class is covered by the second clause of the section. As to the first class of creditors, the act requires the bond to be executed to such corporation "for the benefit of such claimants in sufficient penalty * * * conditioned for the payment of any sum which may be found due such claimant"; and as to the second class of creditors the provision is that the "contractor may prevent the filing of such claims by filing in like manner a bond conditioned for the payment of persons who may be entitled to file such claims." Under the act, as

many bonds may be executed as the necessity of the case may require. One bond may be executed to release the lien of claims already filed, and another to prevent the filing of such claims in the future, or both classes of claims may be included in one bond, as was done in the bond in suit. The claim of the Northwestern Terra Cotta Company falls under the first clause of the section. This claim had already been filed, and the public records of the county disclosed its amount. Concerning this claim the bond recites that it is given by the defendants "as sureties, for the purpose of releasing the claim now on file with the auditor of Montgomery county, Iowa, in favor of the Northwestern Terra Cotta Company, which claim is a mechanic's lien against a public corporation, to wit, Montgomery county, Iowa, * * * and for the use and benefit of said Northwestern Terra Cotta Company, * * * and for the purpose of paying any and all sum or sums found to be due to said Northwestern Terra Cotta Company from Richards & Company, aforesaid. * * * This obligation is executed and we bind ourselves and assigns to pay any such sum or sums so found to be due said Northwestern Terra Cotta Company." As to this claim the obligee is named, the promise to pay is absolute, and the amount to be paid certain, or, what is equivalent thereto, capable of being rendered certain by reference to a public record of the county. The obligation assumed by the defendants to prevent the filing of claims is no less explicit. The bond recites that it is given by the defendants "as sureties, * * * for the purpose of preventing the filing of any mechanics' liens for materials furnished or work and labor performed in the building and erection of said courthouse, for which the persons furnishing said materials and performing said labor would, under the laws of the state of Iowa, be entitled to file a mechanic's lien against said public corporation, to wit, Montgomery county, Iowa, * * * and for the purpose of paying any and all sums due from said Richards & Co. to any and all persons for materials furnished or to be furnished, or for work or labor done or to be done, for which any of said persons have now or may hereafter have a right to file a mechanic's lien against said public corporation, Montgomery county, Iowa. * * *" The bond is prolix and informal, but the obligations assumed by the defendants are distinctly stated, and several times repeated. The fact that the county was not named as the obligee in the bond, as required by the act, does not affect its validity. By the terms of the act the bond is to be executed "to such corporation, for the benefit of such claimants." It is the claimants, and not the county, who are to be secured by the bond. They are made the sole beneficiaries, and by the terms of the act "suit may be brought on said bond by any claimant." Independently of this latter provision, the claimants could have maintained the suit on the bond as the real parties in interest. Moreover, the Code of Iowa provides that a mistake in the name of an obligee in a bond shall not vitiate the security. We quote the sections which show this:

"Sec. 324. Whenever security is required to be given by law, or by order on judgment of a court, and no particular mode is prescribed, it shall be by bond.

"Sec. 325. Such security, when not otherwise directed, may, if for the benefit of individuals, be given to the party intended to be thereby secured. If in relation to the public matters concerning the inhabitants of one county or part of a county, it may be made payable to the county; if concerning the inhabitants of more than one county, it may be made payable to the state. But a mere mistake in these respects will not vitiate the security."

The statute of Iowa required sheriff's bonds to be given to the county. A sheriff's bond was given to the "people of Woodbury county," and in answer to the contention that this rendered the bond void the supreme court of Iowa said:

"It is further submitted that the bond, being given to the 'people of Woodbury county,' is not such a bond as would make the defendants liable, there being no obligee of the contract, no such person or corporation known to the law. A mistake of this character will not vitiate the security. See section 2506 of the Code." Charles v. Kaskins, 11 Iowa, 329.

The section cited by the court as 2506 is now section 325 of McClain's Annotated Code of Iowa, which we have quoted above. This opinion of the supreme court of Iowa, construing and applying a statute of that state, is binding on this court, and is conclusive on this question. We may add, however, that, independently of the statute and decision referred to, we should have no difficulty in holding that the omission to name the county as obligee in the bond in suit in no manner affected its validity. In State v. Wood, 51 Ark. 205, 10 S. W. 624, the suit was on the bond of a county treasurer, which named no obligee, and it was contended that the bond was void for that reason. Answering this contention, the court, speaking by Chief Justice Cockrill, said:

"It is argued with great earnestness that the treasurer's bond which is the foundation of the suit is void, upon the ground that it names no obligee. The fallacy lies in the assumption that the obligation has not been assumed to any one. A bond is construed like any other contract or instrument of writing,—it is enough that the intent plainly appears, though it be not fully and particularly expressed. Partridge v. Jones, 38 Ohio St. 375. 'If there ever was a time,' says the court in the case cited, quoting from another case, 'when the court listened to trivial verbal inaccuracies in contracts when the real meaning and intention of the parties was plain, that time has gone by, and the only object of the courts is that, when the meaning and intention of the parties are perfectly plain, no grammatical inaccuracy or want of the most appropriate words shall render the instrument unavailing.' It was never regarded as necessary that the obligee in a bond should be specified eo nomine. It was enough if he was so designated that he might be certainly ascertained. Preston v. Hull, 12 Am. Law Reg. (N. S.) 699, and note; Fellows v. Gilman, 4 Wend. 419. * * * The condition which shows the design of the bond is the important requirement in such an undertaking, and when that is properly framed, as it is conceded it was in this instance, 'the naming of an obligee is,' as Judge Cooley expressed it in delivering the judgment for the supreme court of Michigan, 'the merest formality possible, so that, if the instrument omitted to name one, * * * the substance of the undertaking would remain.' Bay Co. v. Brock, 44 Mich. 45, 6 N. W. 101. The substance remaining, how can the bond be void for informality?"

The doctrine of this case has our approval, and is supported by the best-considered modern cases. Bank v. Smith, 5 Allen, 415; Preston v. Hull, 23 Grat. 600; Bay Co. v. Brock, 44 Mich. 45, 6 N. W. 101.

The condition of the bond in suit is that required by the act. It is true, no penalty is named as such, but the condition of the bond

supersedes the necessity of naming a lump sum as a penalty.   If a penalty was named, it would, in order to meet with the requirements of the act, have to be in a sum equal to the sum of all the claims that had accrued or might thereafter accrue.   The presumption of law is, therefore, that if any specified sum had been named in the bond as a penalty, it would have been a sum equal in amount to all the claims.   A bond which named a less sum would not have been a compliance with the act.   The difficulty in fixing a penalty as to claims which have not accrued or have not been filed is apparent.   No one can know with any degree of certainty what they will amount to.   The bond was, therefore, with the assent of the defendants, conditioned for the payment of all claims which had been or which might thereafter be filed.   The extent of the obligation of the defendants on this bond is precisely what it would have been had it named the penalty required by the act.   The penalty must have equaled the amount of all the claims.   The bond is the exact legal equivalent of this.   By it the defendants agree to pay the amount of all the claims.   No claim is included which would not have been included in the penalty of the bond' had it complied technically with the requirement of the act.   Instead of naming a sum as the penalty, the only effect of which would have been to limit the liability of the defendants to the sum named, the parties chose to fix the limit of their liability by specifying the claims they obligated themselves to pay, and this is the penalty of the bond, and a sufficient compliance with the act in that regard.

Other technical objections to the bond as a statutory bond need not be considered.   Assuming, but not deciding, that they are well founded, the bond is unquestionably a good common-law bond.   It is well settled that a bond given in pursuance of some requirement of law may be valid and binding on the parties, although not made with the formalities or executed in the mode provided by the statute under which it purports to have been given.   This rule rests on the principle that, although the instrument may not conform to the special provision of the statute or regulations with which the parties executed it, nevertheless it is a contract voluntarily entered into upon a sufficient consideration, for a purpose not contrary to law, and therefore it is obligatory upon the parties to it in like manner as any other contract or agreement is held valid at common law. Bank v. Smith, 5 Allen, 415; U. S. v. Bradley, 10 Pet. 357; U. S. v. Linn, 15 Pet. 311; U. S. v. Hodson, 10 Wall. 395; Shepard v. Collins, 12 Iowa, 570.   The bond in suit possesses all the requisites of a good common-law bond.   It was voluntarily given upon a sufficient consideration, for a lawful purpose, and is as obligatory on the makers as if it had conformed technically with the requirements of the act.   There is another view of the case equally conclusive against the contention of the defendants in error.   Among the special findings of the jury are the following:

"(10) We find that about the 2d day of February, 1891, while the said plaintiffs were engaged in performing the said contracts and furnishing said material and labor, and before the same had been completely furnished and performed, and for the purpose of preventing the plaintiffs from filing a

claim against the county of Montgomery for the value of their material and labor, the defendants herein executed and delivered and filed with the county treasurer of Montgomery county their bond, a true copy of which is attached to the amended petition of plaintiffs herein, and marked 'Exhibit C.' "

"(13) We find that the plaintiffs relied upon said bond, and assented to the same as valid under the laws of Iowa, and were thereby induced to abstain from filing a claim against the county of Montgomery for the value of material and labor furnished by them, and continued to perform their said contracts in reliance thereon, and continued to rely thereon until after the commencement of this suit, and until after the said Richards & Co. had become insolvent."

The jury have found that the bond was executed and delivered by the defendants "for the purpose of preventing the plaintiffs from filing a claim against the county of Montgomery for the value of their material and labor," and that the bond accomplished its purpose; that the plaintiffs accepted and acted upon it as a compliance with the statute, and have always so treated it; and that, by reason of their reliance upon it, they have lost their right to a mechanic's lien on the building. The defendants, therefore, have received the consideration for which they gave the bond, and the plaintiffs, by accepting and acting upon it, and treating it as valid, have lost the undoubted right they had to make their debt by establishing a mechanic's lien on the courthouse, and they have also lost their opportunity to make their debt out of the contractors by reason of their having become insolvent. We have here all the essential principles to work an estoppel. The defendants made the bond for the purpose of depriving the plaintiffs of a valuable right, and with the intention that the plaintiffs should accept and act upon it in the manner they did, and in a manner that will result in a total loss of their claim if the defendants are not required to perform the obligation of their contract. We do not understand that the learned counsel for the defendants in error dispute the law of estoppel as we have stated it, but their contention is that the facts of this case do not bring it within the rule. They say:

"If an instrument has been executed and delivered, received, accepted, and acted on as a compliance with the statute, and the consideration wholly received by the principal, then we concede that the sureties ought not as a matter of right, and cannot as a matter of law, escape liability on account of legal defects in the form of the instrument by which they are bound. But upon the record made in this case we deny the claim that by reason of the execution of this instrument and its signature by the sureties for whom we appear, Carnegie, Phipps & Company have lost any right, any privilege, or any money, and certainly deny that by reason of the execution and delivery of this instrument Richards & Company, the principals named therein, have received any consideration of any nature or kind whatsoever."

The question whether the plaintiffs in error "lost any right, any privilege, or any money" by reason of their reliance upon the bond is conclusively settled by the special verdict of the jury, which shows they lost their whole debt, except as it may be secured by the bond in suit. And the question whether the defendants "have received any consideration of any nature or kind whatsoever" is also settled by the special verdict of the jury, which shows that the defendants executed the bond for the "purpose of preventing the plaintiffs from filing a claim against the county of Montgomery county for the value

of their material and labor," and that the bond accomplished its purpose, and prevented the plaintiffs from filing their claim. Upon these facts, which are established by the findings of the jury, the defendants are clearly estopped from availing themselves of the defense that the bond does not conform to the requirements of the statute. U. S. v. Hodson, supra; Storm v. U. S., 94 U. S. 76; Ferguson v. Landrum, 5 Bush, 230; Hall v. Wadsworth, 35 W. Va. 375, 14 S. E. 4.

The statute of limitations is also interposed as a defense. The act under which the bond was given provides that "suit may be brought on said bond by any claimant within one year after the cause of action accrues. * * *" The cause of action accrued on the 18th of July, 1891, and suit was brought thereon on the 22d of August, 1891. The petition did not contain the requisite averment as to the diverse citizenship of the parties essential to give the circuit court jurisdiction, and this court reversed the judgment of the circuit court for that reason, and remanded the case, with directions to that court to dismiss it unless the plaintiffs should amend their complaint to show that the circuit court had jurisdiction. Carnegie, Phipps & Co. v. Hulbert, 53 Fed. 10, 3 C. C. A. 391, 10 U. S. App. 454. When the record was returned to that court, the plaintiffs amended their complaint by making the proper jurisdictional averment as to the citizenship of the plaintiffs. It is not claimed that the amendment to the petition introduced any new or different cause of action, but the contention of the defendants' counsel is that, in contemplation of law, the commencement of the suit dates from the time the petition was amended so as to show the circuit court had jurisdiction. This contention is not sound, as we have heretofore held. In Bowden v. Burnham, 59 Fed. 752, 8 C. C. A. 248, in answer to a similar contention we said:

"But the court very properly granted the plaintiffs leave to amend their complaint, and it was amended. Nevertheless, the plaintiff in error asserts that, as the complaint, at the time the attachment was issued, did not contain the necessary jurisdictional averment, every step taken in the case prior to the amendment was void, and that the amendment of the complaint could not impart vitality or validity to anything done before the amendment was made. This contention is wholly untenable. It is every-day practice to allow amendments of the character of those made in this case, and when they are made they have relation to the date of the filing of the complaint or to the issuing of the writ or process amended. When a complaint is amended, it stands as though it originally read as amended. The court in fact had jurisdiction of the cause from the beginning, but the complaint did not contain the necessary averment to show it; in other words, the amended complaint did not create or confer the jurisdiction; it only brought on the record a proper averment of a fact showing its existence from the commencement of the suit."

The judgment of the circuit court is reversed, and the cause remanded, with directions to the circuit court to render judgment in favor of the plaintiffs in error and against the defendants in error for the sum found to be due the plaintiffs in error by the special verdict of the jury, namely, $17,363.60, with interest thereon from the date of the rendition of the verdict at the rate allowed on judgments by the law of Nebraska.