# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉·

## BOYD, HIGGINS & GOFORTH, INC., v. MARY A. MAHONE.

### May 28, 1925.

1. JURISDICTION—*Circuit Court of the City of Richmond—Attachment of Reserved Percentage of a Public Road Contractor, a Nonresident Corporation, in Hands of the State Treasurer—Case at Bar.*—In the instant case, plaintiff sought to hold defendant, a nonresident, liable for personal injuries due as alleged to the negligence of defendant in failing to maintain barricades and warnings as provided for by the road contract. Plaintiff proceeded by attachment in the Circuit Court of Richmond against the reserved percentage of the contractor in possession of the Treasurer of Virginia, making the Treasurer a party. Defendant contended that this reserved fund in the hands of the Treasurer was a public fund not subject to attachment.

   *Held:* That the Circuit Court of Richmond had jurisdiction of the proceedings, and the fund was not a public fund nor impressed with a trust.

2. ATTACHMENT—*Nonresident Debtors—Funds Held by Municipality or State Officers.*—It is the duty and public policy of the State, as expressed in the decisions of the Supreme Court and the statute law, to provide appropriate remedies by which home creditors or residents having claims against a nonresident may subject the assets or effects of the nonresidents to the payment of their debts or claims, when held by municipalities, State officers or State boards, when such proceedings do not interfere with the functions of government.

3. INDEPENDENT CONTRACTORS—*Who are Independent Contractors.*—The law defines an independent contractor to be a person who is employed to do a piece of work without restriction as to the means to be employed, and who employs his own labor and undertakes to do the work according to his own ideas, or in accordance with plans furnished by the person for whom the work is done, to whom the owner looks only for results.

4. INDEPENDENT CONTRACTORS—*Who are Independent Contractors—Inspection and Supervision.*—The reservation to the employer of the privilege of inspecting and supervising the work, and making changes in the plans, does not destroy or impair the character of independent contractor.

5. INDEPENDENT CONTRACTORS—*Who are Independent Contractors—Liability of a Road Contractor for Personal Injuries—Case at Bar.*—In the instant case, a proceedings against a road contractor for personal injuries alleged to have been caused by his negligence, the contract authorized the contractor to close the road but required it to put up detour signs and barricades to prevent persons from driving upon its work during the process of construction. Plans and specifications were furnished by the State Highway Commission but an engineer was put in charge to see that the work was done according to plans. The engineer had no control over the manner or means of the execution of the work.

  *Held:* That defendant was clearly an independent contractor and was not performing a governmental function as agent of the State, and accordingly was liable for negligence.

6. STATE—*State Agencies—Liability for Torts—Road Contractor—Case at Bar.*—Defendant, a road contractor, claimed that although it was an independent contractor yet it was a State agency doing a State work and therefore shared the immunity of the State from liability for torts. It is the law of Virginia that a contractor or other person agreeing to construct or repair a road for a valuable consideration according to plans and specifications furnished by the State Highway Commission is not immune from damages for his torts. If, in the instant case, the injuries complained of had been caused by errors of judgment of the engineers of the State Highway Commission, the contractor might have claimed immunity, but the damage arose from negligence in performance of ministerial and specified duties in connection with the work for which it received a valuable consideration and for which alone it was liable.

7. INDEPENDENT CONTRACTOR—*Road Contractor—Liability for Negligence—Evidence—Harmless Error—Case at Bar.*—In the instant case, a proceedings against a road contractor for negligence, the admission of the testimony of a witness that it was the duty of the defendant under its contract to put barricades at points along the road where it was necessary to warn people of danger, was harmless error, if error. The fact that the contract imposed this duty on the contractor, and made the safeguards subject to the approval of the commissioner, added no force to the noncontract obligation imposed upon it by law, and did not enlarge its liability for negligence.

8. IMPUTABLE NEGLIGENCE—*Driver of Automobiles and Passengers.*—The negligence of the driver of an automobile will not be imputed to a mere passenger unless the passenger has or exercised control over the driver.

Error to a judgment of the Circuit Court of the city

of Richmond, in a proceedings by attachment. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Leake, Leake & Spicer, John A. McRae, Scott & Buchanan,* for the plaintiff in error.

*McGuire, Riely & Eggleston,* and *Withers & Brown,* for the defendant in error.

CHRISTIAN, J., delivered the opinion of the court.

On December 30, 1921, Boyd, Higgins & Goforth, Incorporated, a North Carolina corporation, was under contract with Geo. P. Coleman, State Highway Commissioner, to build about one mile and a half of concrete road in Pittsylvania county; the road to begin at Sandy river bridge in said county and extend in an easterly direction over Sandy creek bridge (which later bridge was not in the contract and specifications) to the corporate limits of the city of Danville. The work was practically completed, but two or three weeks prior to December 30, 1921, the engineer in charge for the Highway Commissioner, in order to prevent the public from using the road, and as the Sandy creek bridge was no longer necessary for the use of the contractor, had the flooring of that bridge removed and both ends of the bridge barricaded.

On the date above mentioned, about 9:30 o'clock at night, the plaintiff, with Miss Brown, both guests of W. R. Harrison, were coming from Martinsville to Danville in his Ford coupe, which he was driving, and when he came to the Sandy river bridge he saw no detour signs, nor any barricades or danger signals, so proceeded:

to take the new concrete road to Danville. When the machine got within a few feet of Sandy creek bridge, there being no barricade at that end of the bridge or red light upon either end of the bridge, the driver discovered that the floor of the bridge had been removed, but too late to stop his car, and, to prevent plunging into the creek, ran his car into the left girder of the bridge in order to save himself and his guests, but the car turned over and fell down the embankment, pinning the plaintiff under the car and seriously injuring her. Under the contract it was the duty of the defendant to establish and maintain barricades, danger warnings, and detour signs on said road wherever same were required for the safety of the public. This duty the defendant claimed to have performed, and further that the plaintiff was guilty of contributory negligence in riding in the car without protest while being driven at an illegal rate of speed, which was the proximate cause of her injury.

There was a sharp conflict in the evidence upon every fact necessary to be established by the plaintiff to maintain the issue upon her part, as well as the defendant's allegations of contributory negligence. After the jury had been instructed by the court and the case argued by counsel it retired to its room and after some time returned into court with a verdict for the plaintiff and assessed her damages at $2,000.00. Thereupon the defendant, by counsel, moved the court to set aside said verdict on the following grounds: "That it was contrary to the law and the evidence; was without evidence to support it; because of errors committed by the court upon the trial on admitting certain evidence for the plaintiff and in refusing to admit certain evidence for the defendant; and for errors in giving and refusing instructions." The court overruled this motion for a new trial and entered up judgment upon the verdict for the plaintiff.

Thereupon the case was brought before this court by writ of error for errors assigned in its petition, which will be considered in sequence so far as necessary to a just determination of the law and merits of the case.

Boyd, Higgins & Goforth, Incorporated, is a North Carolina corporation, and the plaintiff proceeded against it in the Circuit Court of Pittsylvania county by attachment, and made Geo. P. Coleman, State Highway Commissioner, a party defendant, to attach the reserved percentage provided by the contract to be retained until the work was completed according to specifications. Coleman filed his answer in which he stated that there was a retained percentage amounting to about $5,000.00 in possession of the Treasurer of Virginia, payable ninety days after the contractor had fulfilled his contract and the work had been accepted. Thereupon the attachment was amended and the State Treasurer made a party thereto. Upon the maturity of the amended attachment, on motion of the plaintiff and without objection from the defendant, the venue of the proceeding was changed and the case removed to the Circuit Court of the city of Richmond as provided by statute.

Upon the calling of this case for trial (it having been continued twice previously at the request of the defendant company and with consent of the plaintiff), the defendant moved the court to quash the petition and attachment on the ground that the court was without jurisdiction of the subject matter and that the petition did not state a case upon which there could be a recovery. The motion was overruled by the court, to which action of the court the defendant excepted. Hence the first inquiry is into the court's jurisdiction or power to determine the rights of the parties.

This was a proceeding *in rem* against a nonresident corporation by attachment of a debt due it by the State,

and if the fund due is not subject to attachment 'the court's jurisdiction must fail.

[1] The defendant contends that its reserved fund in the hands of the State Treasurer is a public fund, hence· not subject to attachment, and cites *Rollo* v. *Andes Ins. Co.*, 25 Gratt. (64 Va.), 509, 14 Am. Rep. 147, as author-· ity to sustain its position.   In that case a nonresident creditor of the foreign insurance company undertook to subject by garnishment the bonds deposited by the com-· pany with the State Treasurer under the statute for the· protection of the policyholders of this State, and when the claims of the resident policyholders were satisfied then to return the bonds or the balance of the proceeds thereof to the company.   The court held the bonds were an express trust created by statute for the benefit of resident policyholders in the possession of the Treas-· urer and that a State officer could not be sued in regard to the bonds without consent of the sovereign, and per- mission had not been given to nonresidents to sue the· Treasurer in reference thereto, therefore the garnish- ment was properly dismissed.   This same rule of law was reaffirmed in the case of *Buck* v. *Guarantors' Co.*, 97 Va. page 720, 34 S. E. 950.   But in the case of the *Universal Life Insurance Co.* v. *Cogbill*, 30 Gratt. (71 Va.), 77, which was a suit in chancery to subject the bonds of an insolvent insurance company similarly held under the statute to the repayment of premiums paid on poli-· cies by residents of Virginia.   The court held that the· Treasurer was a proper party to the suit, and by virtue· of section 7, chapter 44, Code 1873, which is similar to subsection 6, section 6049, Code 1919, that the Circuit Court of the city of Richmond had exclusive jurisdic-· tion for the trial of all cases where by the statute State· officers and boards mentioned therein may be sued.

[2] It is the duty and public policy of the State, as ex-·

pressed in the decisions of the Supreme Court and the statute law, to provide appropriate remedies by which home creditors or residents having claims against a nonresident may subject the assets or effects of the nonresidents to the payment of their debts or claims, when held by municipalities, State officers or State boards, when such proceedings do not interfere with the functions of government. *Portsmouth Gas Co.* v. *Sanford*, 97 Va. 128, 33 S. E. 516, 45 L. R. A. 246, 75 Am. St. Rep. 778, and *Hicks, Trustee* v. *Roanoke Brick Co.*, 94 Va. 741, 27 S. E. 596.

In the case before the court the reserved percentage was due the contractor but not payable; the work was practically completed; it had given bond to release the amount due, and had appeared generally in the case by making several motions for continuances and giving notice to take depositions and no off-sets or counter claims were asserted by the State Highway Commissioner or the Treasurer. The fund was not a public fund nor impressed with a trust as claimed, therefore, the circuit court had jurisdiction of the case and the motion to quash the attachment was properly overruled.

[3] The next error assigned is in the nature of a demurrer and goes to the merits of the case. The contention is that the defendant was performing a governmental function as agent of the State, hence not liable for the negligence charged. To sustain the position the defendant claims it was not an independent contractor. The law defined an independent contractor to be a person who is employed to do a piece of work without restriction as to the means to be employed, and who employs his own labor and undertakes to do the work according to his own ideas, or in accordance with plans furnished by the person for whom the work is done, to

whom the owner looks only for results. *Emerson* v.
*Fay*, 94 Va. 60, 26 S. E. 386, and *Richmond* v. *Sitterding,*
101 Va. 354, 43 S. E. 562, 65 L. R. A. 445, 99 Am. St.
Rep. 879.

[4] The reservation to the employer of the privilege
of inspecting and supervising the work, and making
changes in the plans, does not destroy or impair the
character of independent contractor. *Bibb's Adm'r* v.
*Norfolk, etc., Ry. Co.,* 87 Va. 711, 14 S. E. 163.

[5] The contract in this case authorized the con-
tractor to close the road but required it to put up detour
signs and barricades to prevent persons from driving
upon its work during the process of construction; in fact,
the flooring of Sandy creek bridge was taken up to facili-
tate the work and prevent the public from going upon
the same until it was accepted and opened. The plans
and specifications were furnished by the State Highway
Commission, but an engineer was put in charge to see
that the work was done according to the plans and speci-
fications. This engineer had no control over the manner
or means of the execution of the work. He looked only
for results, and determined whether the grading, con-
crete and other details measured up to the contract.
The defendant was clearly an independent contractor as
defined by law.

Counsel for the defendant claim further that although
it is an independent contractor, yet it was a State
agency, doing a State work and, therefore, shares the
immunity of the State from liability for torts. In sup-
port of this view *Maia's Adm'r* v. *Eastern State Hos-
pital,* 97 Va. page 507, 34 S. E. 617, 47 L. R. A. 577, is
cited. This case holds that "the Eastern State Hos-
pital is a public corporation governed and controlled by
the State, and acts exclusively as an agency of the State
for the protection of society and the promotion of the

best interests of a class of unfortunate citizens. Although, under the terms of its charter, it may sue and be sued, regard must be had to the objects for which it was established in order to determine its liability. It is not liable in damages for a personal injury inflicted on one of its inmates in consequence of the negligence or misconduct of persons administering the powers of the corporation or their agents or employees."

In the case of the *City of Richmond* v. *Long's Adm'r*, 17 Gratt. (58 Va.), 375, 94 Am. Dec. 461, another hospital case, it was held that municipal corporations in the exercise of their political, discretionary and legislative authority are not liable for the misconduct, negligence or omissions of the agents employed by them, but municipal corporations, in the discharge of ministerial or specified duties, assumed in consideration of the privileges conferred by their charter, are liable for the misconduct, negligence or omissions of their agents. The hospital being a discretionary and political institution of the city, operated for charity, it was immune from liability for the negligence of its agents in operating the hospital. The law laid down in these cases can have no bearing upon the instant case.

The case of *Sayre* v. *Northwestern Turnpike Road*, 10 Leigh (37 Va.), 454, another case cited, was a suit to recover for injury to plaintiff's mill and milldam by a bridge and abutments defectively erected by the company and washed, during a flood, upon the plaintiff's property, thereby destroying the same. By its charter the company could sue and be sued. The court held: "An action will not lie against the president and directors of the Northwestern Turnpike Road; the company being composed exclusively of officers of the government, having *no personal interest in it,* or in its concerns, and only acting as the organ of the Commonwealth in

effecting a great public improvement." This statement
of the law was too broad for the issue before the court,
so that this case was reviewed and modified in *Dunning-
tons* v. *Pres. & Dir. N. W. Turnpike Road,* 6 Gratt. (47
Va.), 172, to accord with the common law as follows:
"That commissioners or trustees, acting under author-
ity of law, to effect a public improvement for public
purposes in which they have *no direct private interest,*
and who do not exceed their jurisdiction, are not liable
to an action for a *consequential injury resulting from an
act they are authorized to do."* The above rule of law, as
modified by the Constitution of 1902, was enunciated
again by the Supreme Court in *Nelson County* v. *Loving,*
126 Va. 283, 101 S. E. 406.

But the general rule of liability of municipal corpora-
tions for acts in grading, keeping in repair, etc., of their
streets best illustrates the principles and extent which
the courts have granted to public agencies immunity
from torts: Municipal corporations in the exercise of
their discretionary authority, such as the grade or loca-
tion of a street where no property is taken or physically
damaged, are not liable for negligence or omissions of the
agents employed by them, but in the discharge of minis-
terial or specified duties assumed in consideration of the
privileges conferred by their charter are liable for mis-
conduct, negligence or omissions of their agents. But
this rule of liability does not exonerate the agent or in-
dependent contractor from his duty to exercise reason-
able care in performance of the work he has undertaken.
If the injuries complained of in this case had been
caused by errors of judgment of the engineers of the
State Highway Commission in the plan of the bridge or
road, then the contractor might claim immunity, but the
damage arose from negligence in performance of minis-
terial and specified duties in connection with the work

for which it received a valuable consideration and for which alone it was liable. The Kentucky cases cited are based upon the theory that the contractor, in consideration of immunity from liability for negligence, made a lower price for the work. This theory is contrary to the law and public policy of Virginia, and is not approved by text writers or any other courts. The contract itself directly negatives any such contention, and if it had expressly provided that the contractor should not be liable for injury to third persons from its negligence it would be therefore ineffective.

[6] It is the law of Virginia that a contractor or other person agreeing to construct or repair a road for a valuable consideration according to plans and specifications furnished by the State Highway Commission is not immune from damages for his torts. *Whitten* v. *McClelland,* 137 Va. 726; 120 S. E. 146.

[7] The admission of the testimony of Bouldin that it was the duty of the defendant under its contract to put barricades at points along the road where it was necessary to warn people of danger, was harmless error, if error. The fact the contract imposed this duty on the contractor, and made the safeguards subject to the approval of the Commissioner, added no force to the non-contract obligation imposed upon it by law, and did not enlarge its liability for negligence.

[8] The allegation of contributory negligence on the part of the plaintiff is not sustained by the evidence. She was the guest with Miss Brown of Harrison and had not exercised any control over the driver.

As said by Kelly, P., in *Director General* v. *Pence's Adm'r,* 135 Va. 329, 345, 116 S. E. 351, 356:

"The 'joint enterprise' which will render the contributory negligence of a driver imputable to a person riding with him must invest such person with some voice in the

control and direction of the vehicle. The rule is founded upon the doctrine of principal and agent. The passenger must be so related to the driver as that the maxim '*qui facit per alium facit per se*' is applicable, as said by this court in *Va. Ry. & Pow. Co.* v. *Gorsuch*, 120 Va. 655, 91 S. E. 632, Ann. Cas. 1918B, 838: 'The doctrine of imputable negligence has been discussed and the books are full of cases dealing with the question. There are some conflicts in the decisions, but it may be regarded, as by the overwhelming weight of authority, that the negligence of the driver of an automobile will not be imputed to a mere passenger, unless the passenger has or exercises control over the driver'. "

It is unnecessary to consider the instructions in detail as the principles of law set forth in them have been fully discussed in this opinion and shown to have no application to the facts established by the evidence.

The evidence in the case, while conflicting, its weight and credibility was for the jury which found for the plaintiff, and this court, as the evidence sustains the verdict, and there are no errors of law in the trial, will affirm the judgment.

*Affirmed.*