## CHESAPEAKE & O. RY. CO. v. COFFEY.

Circuit Court of Appeals, Fourth Circuit.
January 14, 1930.

No. 2891.

Samuel H. Williams and Armistead R. Long, both of Lynchburg, Va. (Harrison, Long & Williams, of Lynchburg, Va., on the brief), for appellant.

Charles Curry, of Staunton, Va. (Curry Carter, of Staunton, Va., on the brief), for appellee.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge. This is a suit brought by appellee, who was plaintiff below, against appellant, who was defendant below, in the District Court of the United States for the Western District of Virginia, at Lynchburg. The defendant owns and operates a line of railroads running through both the Eastern and Western Districts of Virginia, with its chief office in Richmond, in the said Eastern District. The plaintiff, who was a citizen of the state of Florida, claimed to have been injured by having her back broken while crossing the defendant's railroad track in an automobile, driven by another, at a grade crossing within the corporate limits of the town of Glasgow, in Rockbridge county, Va., in said Western District. The automobile in which the plaintiff was riding was traversing what was known as the Lexington and Lynchburg road. Plaintiff was a member of a party con-

sisting of a number of persons who had been on a pleasure trip to Natural Bridge, and was returning from there when the accident happened.

The injury to the plaintiff occurred on September 12, 1926. This suit was instituted on September 8, 1927, only a few days before the Virginia Statute of Limitations, as to actions of this character, would have run against this suit. A summons was issued on the day the suit was brought and served on defendant, and required defendant to appear at the first October, 1927, rules. The declaration was filed at the first October rules, but the defendant made no appearance at rules. Defendant's first appearance was on January 2d, the first day of the term of the District Court, at Lynchburg, at which time an appearance was made by counsel for the defendant, and an order was entered giving leave to the plaintiff to amend her declaration so as to correct a mistake in her given name, which order concluded as follows:

"And thereupon the defendant, by its attorney, filed its plea of not guilty, and the defendant is given thirty days from this date within which to file its plea of contributory negligence."

This concluding paragraph was admittedly written into the order by one of the attorneys for the defendant.

On January 7th, notice was given, by attorneys for the defendant, of a motion to be made on January 16th, for leave to withdraw the plea of the general issue entered on January 2d, and to file a plea in abatement to the jurisdiction of the court, under section 52, Judicial Code (28 USCA § 113). This motion was made and argued before the court, and the judge below refused leave to the defendant to withdraw the plea.

On March 8, 1928, attorneys for plaintiff asked leave to file an amended declaration, which leave was granted, and the declaration was amended so as to allege that the plaintiff was a citizen as well as an inhabitant of the state of Florida; the original declaration having stated that she was an inhabitant of that state. On March 24th, the defendant, by counsel, appearing solely for the purpose of making the motion, again moved that it be allowed to withdraw its appearance because of the filing of amended declaration, which motion was overruled.

A demurrer to the declaration was overruled and leave given to further amend the declaration so as to strike out the allegation that the defendant resided in the Western District of Virginia. Again the defendant demurred to the amended declaration, and the demurrer was overruled. On motion of the plaintiff the defendant filed a written statement of its ground of defense, and on motion of the defendant the plaintiff filed a bill of particulars.

In January, 1929, a trial was had, and the jury rendered a verdict for plaintiff in the sum of $25,000. Motion was made to set aside the verdict, which motion was overruled and judgment entered for the plaintiff, from which action of the court below this appeal was taken.

The first assignment of error is that the court erred in denying the defendant's motion for leave to withdraw its appearance and plea of general issue, and to file instead a plea to the jurisdiction of the court; it being contended that the court had a discretionary power to grant such permission. Power of the court to permit withdrawal of appearance and withdrawal of plea of general issue is usually discretionary. 4 C. J. 1371; Brookings State Bank v. Federal Reserve Bank (D. C.) 291 F. 659; Audenried v. East Coast Milling Co. (C. C.) 124 F. 697.

It makes no difference whether the court had, under the Virginia statute, such power or not, as the judge below denied the motion, and we think properly did so. In an opinion passing on the motion the learned judge below said:

"* * * Consequently a valid permission now given to the defendant to set up the objection that the action was brought in the wrong district would necessarily have the effect of barring the plaintiff's remedy without hope of a trial on the merits. The negligence of the plaintiff's attorney in forgetting the existence of the federal venue statutes in September was as it seems to me no greater than the negligence of the defendant's attorney in forgetting the existence of these statutes in January. And I can see no propriety in punishing the negligence of plaintiff's counsel so severely as to bar the plaintiff's remedy, while wholly excusing the same kind and as I believe the same degree of negligence on the part of the defendant's attorney."

A general appearance and a plea to the merits waive any right to object to venue.

"Where the case is one of which the court can take jurisdiction, a general appearance to the merits by defendant waives all defects in the service and all special privileges of the defendant in respect to the particular court in which the action is brought.

"The right of defendant to insist upon suit against him being brought only in the district whereof he is an inhabitant is a personal privilege which he may waive, and he does waive it by pleading to the merits.

"The party who in the first instance appears in a suit and pleads to the merits waives any right to challenge thereafter the jurisdiction of the court on the ground that the suit has been brought in the wrong district."

Note in St. Louis & San Francisco Railway Co. v. Lucy McBride et al., 141 U. S. 127, 11 S. Ct. 982, 35 L. Ed. 659.

See, also, 15 Rose's Notes, pp. 785, 786, 787, and 788.

"The objection that a particular Federal circuit court is without jurisdiction of a suit between citizens of different states because neither of the parties is a resident of the district is waived by demurring upon grounds reaching to the merits of the cause of action in addition to jurisdictional grounds, where, under the local practice, defendant could have made a special appearance by motion aimed at the jurisdiction of the court over his person, or by motion to quash the service of process." Western Loan & Savings Co. v. Butte & Boston Consolidated Mining Co., 210 U. S. 368, 28 S. Ct. 720, 52 L. Ed. 1101.

On this question Judge Waddill, speaking for the court, in Wetzel & T. Ry. Co. v. Tennis Bros. Co. (C. C. A.) 145 F. 458, 464, 7 Ann. Cas. 426, said:

"Nothing is better settled than that after a plea in bar, a plea in abatement will not be received, except for new matter arising after the commencement of the suit."

See authorities cited.

The Virginia statute on this question is found in the Acts of the Virginia Assembly of 1920, at page 28, and reads as follows:

"Where the declaration or bill shows on its face proper matter for the jurisdiction of the court no exception for want of such jurisdiction shall be allowed unless it be taken by plea in abatement. No such plea or any other plea in abatement shall be received after the defendant has demurred, pleaded in bar or answered to the declaration or bill, nor after the rules next succeeding the rules at which the declaration or bill is filed."

In Wetzel & T. Ry. Co. v. Tennis Bros. Co., supra, this court held under a West Virginia statute, in effect, similar to the Virginia statute, that a plea in abatement would not be received after a general appearance and after a plea in bar.

In St. Louis & San Francisco Railway Co. v. Lucy McBride et al., supra, the court said:

"Without multiplying authorities on this question, it is obvious that the party who in the first instance appears and pleads to the merits waives any right to challenge thereafter the jurisdiction of the court on the ground that the suit has been brought in the wrong district. Charlotte [First] Nat. Bank v. Morgan, 132 U. S. 141 [10 S. Ct. 37], 33 L. Ed. 282; Fitzgerald & M. Const. Co. v. Fitzgerald, 137 U. S. 98 [11 S. Ct. 36], 34 L. Ed. 608."

The second assignment of error is that the court erred in overruling defendant's objection to the jurisdiction of the court under the amended declaration, changing the allegation that the plaintiff was an inhabitant of the state of Florida to one that she was a citizen of the state of Florida. On this point the judge below said:

"The amended declaration asserts that the plaintiff was a citizen of Florida at the institution of the suit. There is no contention made that the counsel for the defendant ever noticed the use of the word 'inhabitant' instead of the word citizen in the original declaration until I called attention to it in my former opinion. It follows that the present motion is based on the theory that the error of plaintiff's counsel in describing his client as an 'inhabitant' of Florida, rather than as a citizen of Florida, furnishes a sufficient reason for disregarding the waiver by the defendant's counsel of the objection to venue. I am unable to see force in this argument. The failure of counsel for defendant to promptly object on the ground that diversity of citizenship had not been alleged is sufficient evidence that they either thought that diversity of citizenship had been properly alleged, or that they believed that it existed. They were therefore not in the least degree misled by this inaccuracy in the original declaration. It follows that section 274c, Jud. Code, U. S. C. title 28, sec. 399 (28 USCA § 399), applies here and it requires that since the amendment has been made this case 'shall be proceeded with the same as though the diverse citizenship had been fully and correctly pleaded at the inception of the suit.' It is impossible to proceed as if the diversity of citizenship had been correctly pleaded in the original declaration (filed October 5th, 1927), and yet sustain a motion which is based on nothing except the failure of plaintiff's attorney to correctly plead the diversity of citizenship in the original declaration.

324

"The cases cited by counsel for the defendant Hohorst v. Hamburg-American Packet Co. (C. C.) 38 F. 273; Hagstoz v. Mutual Life Ins. Co. (C. C.) 179 F. 569; Durabilt Steel Locker Co. v. Berger Mfg. Co. (D. C.) 21 F.(2d) 139; Leonard v. Merchants' Coal Co. (C. C. A.) 162 F. 885, are so unlike the case at bar that I do not feel justified in discussing them."

We think that the action of the judge in overruling defendant's objection was proper.

"It is elementary that an amendment dates back to the filing of the petition, and is to supply defects in the cause of action then existing, or at most to bring into the suit grounds of action which existed at the beginning of the case." United States ex rel. Texas Portland Cement Co. v. McCord, 233 U. S. 157, 34 S. Ct. 550, 553, 58 L. Ed. 893.

"Amendments to pleadings properly allowed by the court, which present no new cause of action and no controlling fact which did not exist when the pleading was filed, relate back to and take effect at the time of its filing. The bill in this case stands as though the original bill read as does the amended bill, and the court had plenary jurisdiction of the case and of the parties to the amended bill from the time of the commencement of the suit. Bowden v. Burnham, 59 F. 752, 8 C. C. A. 248; Carnegie, Phipps & Co. v. Hulbert, 70 F. 209, 16 C. C. A. 498." Interstate Refineries, Inc., v. Barry (C. C. A.) 7 F.(2d) 548, 550. See Realty Holding Co. v. Donaldson, 268 U. S. 399, 69 L. Ed. 1014, 1015; Fleischmann Construction Co. v. United States for, etc., 270 U. S. 350, 46 S. Ct. 284, 70 L. Ed. 624–631; B. & O. Ry. Co. v. McLaughlin (C. C. A.) 73 F. 519–521, opinion by Judge Taft, now Chief Justice Taft.

Assignments of error 3, 4, and 5 relate to the acts of the court in admitting or refusing to admit certain testimony during the trial, but a careful examination of questions raised shows no merit in the contention of attorneys for appellant as to these assignments.

Assignments 8 and 9 allege error on the part of the trial court in having refused to give certain instructions requested by the plaintiff and the defendant, and in giving in lieu thereof the court's own instructions, and to allege error in the charge of the court to the jury.

■ A study of the instructions requested, and those given by the court in writing and in the oral charge, leads to the conclusions that the law was properly presented to the jury by the court, and that no instruction requested by the defendant that should have been given was not fully and substantially covered in the court's instructions and charge.

"The court may decline to give any of the instructions prayed for and instruct in his own language." Baker v. United States (C. C. A.) 21 F.(2d) 903, 907, and authorities there cited; Dunagan v. Appalachian Power Co. (C. C. A.) 23 F.(2d) 395.

■ It is specially urged by counsel for defendant that the court erred in instructing the jury as to the rule of contributory negligence. The question of due care and contributory negligence is generally left to the jury. Flannelly v. Delaware & Hudson Co., 225 U. S. 597, 32 S. Ct. 783, 56 L. Ed. 1221, 44 L. R. A. (N. S.) 154.

■ The plaintiff was a passenger in an automobile driven by another, and negligence of the driver, even if proven, cannot be imputed to her.

"While there is some authority to the contrary, the great weight of authority supports the doctrine that the contributory negligence of the driver of a private conveyance cannot be imputed to a mere guest or gratuitous passenger who neither has nor assumes the right to direct or control the conveyance or the conduct of the driver in its operation so as to preclude recovery by such passenger for an injury caused by negligence of a third person." 45 Corpus Juris, pp. 1032, 1033.

This also seems to be the rule in Virginia. Atlantic, etc., R. Co. v. Ironmonger, 95 Va. 625, 29 S. E. 319; Southern R. Co. v. Jones, 118 Va. 685, 88 S. E. 178; Va. Ry. & Power R. Co. v. Gorsuch, 120 Va. 655, 91 S. E. 632, Ann. Cas. 1918B, 838; Shiflett's Adm'x v. Va., etc., Co., 136 Va. 72, 116 S. E. 500; Morgan v. Atlantic Coast Line R. Co., 136 Va. 394, 118 S. E. 233; Boyd v. Mahone, 142 Va. 690, 128 S. E. 259; Virginian R. Co. v. Farr, 147 Va. 217, 136 S. E. 668; Norfolk, etc., R. Co. v. James, 147 Va. 178, 136 S. E. 660.

"The true rule is, that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it." Milwaukee, etc., R. Co. v. Kellogg, 94 U. S. 469, 474, 24 L. Ed. 256.

■ In reply to one of the questions of the jurors the court charged the jury orally as follows:

" * * * The law does not fix the rate of speed nor does it fix the rate of speed that must be contemplated by the railroad company in making and maintaining crossings. I have told you that it was the duty of the railroad company to use ordinary care to keep the crossing in a reasonably safe condition. That is the duty of the railroad company. The speed at which Percy Page drove over the crossing may be a very important item of evidence in this case, but the law does not undertake to do more than use such words as 'reasonable,' 'suitable' and 'proper' in the circumstances, and you can see the reason why. If I had a dying baby in my arms I would tell my chauffeur to go 75 miles an hour to a doctor, and I would be doing what you would say was reasonable. If, on the other hand, I was out on a pleasure ride, and I went over a road crossing at any high rate of speed and received an injury, you would say it was my own fault. Therefore, the law does not undertake to fix the speed, it leaves to the jury whether or not the care shown by the railroad company in the maintenance of that crossing was ordinary care to maintain a reasonably safe crossing, and it leaves to the jury whether or not the speed at which the automobile was driven over that crossing was unreasonable and negligent. I do not believe that I dare say any more. I think I have covered the ground just as fully as the law permits."

We are of the opinion that there was no reversible error in this charge. There was no claim on the part of the plaintiff that she was engaged in a journey that required any special haste, but on the contrary was, admittedly, on a pleasure trip, and the statement of the court, as to great speed being permitted by great emergency, could have had no influence on the jury.

 Another point is raised as to the speed at which the automobile was being driven. The testimony on this question was conflicting, there being ample evidence to support the jury in finding that the automobile, in which the plaintiff was riding, was not exceeding the limit fixed by the law of Virginia.

There was a direct conflict in the evidence as to the condition of the crossing at or about the time of the accident. A great number of witnesses were examined on both sides on this point. Some eighteen witnesses testifying for the plaintiff and about twenty witnesses testifying for the defendant. These questions of fact were fairly and properly submitted by the trial court to the jury. It is not necessary to cite authorities to the

effect that courts cannot invade the province of juries, as to questions of fact, and that verdicts of juries will be upheld where there is any substantial evidence to support them. This is the case here.

The tenth assignment of error relates to the action of the court in overruling the motion to set aside the verdict, and in view of the conclusions above stated, the motion was properly overruled.

 Assignment of error 11 deals with the refusal of the court to allow the defendant to exhibit to one of the witnesses an ex parte statement made or at least signed by him September 23, 1926. The Virginia statute on this question (section 6216, Code 1919) is as follows:

"A witness may be cross-examined as to previous statements made by him in writing or reduced into writing, relative to the subject matter of the proceeding, without such writing being shown to him; but if it is intended to contradict such witness by the writing his attention must, before such contradictory proof can be given, be called to the particular occasion on which the writing is supposed to have been made, and he may be asked if he did not make a writing of the purport of the one to be offered to contradict him, and if he denies making it, or does not admit its execution, it shall then be shown to him, and if he admits its genuineness, he shall be allowed to make his own explanation of it; but it shall be competent for the court at any time during the trial to require the production of the writing for its inspection, and the court may thereupon make such use of it for the purpose of the trial as it may think best. The provisions of this section shall apply as well to criminal as civil cases. But this section is subject to this qualification, that in an action to recover for a personal injury or death by wrongful act or neglect, no ex parte affidavit or statement in writing other than a deposition, after due notice, of a witness as to the facts or circumstances attending the wrongful act or neglect complained of, shall be used to contradict him as a witness in the case."

Under this statute we cannot see how the trial judge could have ruled other than he did on this point.

The many involved questions raised in this case have been carefully considered, and we have reached the conclusion that there was no reversible error in the trial, and the judgment of the court below is accordingly affirmed.